McCaul, Assignee, etc. vs. Thayer and another.

---

McCaul, Assignee, etc., Appellant, vs. Thayer and another, Respondents.

*November 3 — November 22, 1887.*

*Debtor and creditor: Preferences: Judgment notes: Statute construed.*

An execution levy made under a judgment entered within sixty days prior to an assignment for the benefit of creditors, upon a judgment note given by the assignor more than sixty days prior to such assignment, is not void under sec. 2, ch. 349, Laws of 1883. Cassoday and Taylor, JJ., dissent.

APPEAL from the Circuit Court for *Monroe* County.

The appeal is from an order sustaining a demurrer to the complaint. The facts are sufficiently stated in the opinion.

For the appellant there were briefs signed by *Geo. Graham, Finches, Lynde & Miller,* and *Pinney & Sanborn,* and the cause was argued orally by *Mr. Pinney* and *Mr. Graham.*

For the respondents there was a brief by *Morrow & Mas-*

McCaul, Assignee, etc. vs. Thayer and another.

*ters*, attorneys, and *Jenkins*, *Winkler*, *Fish & Smith*, of counsel, and oral argument by *Mr. Fish* and *Mr. Morrow*.

ORTON, J. The facts of this case are briefly these: On May 9, 1884, J. T. Bears and T. S. Powers made their joint and several notes, payable to the defendant *Thayer* in ninety days from date, for $6,809.70, with interest at ten per cent. after maturity. " And, to secure the payment of said amount," the makers executed " an irrevocable power of attorney " to enter judgment and issue execution to collect the amount due on said note. On the same day the same parties made another note payable to the defendant *Thayer* within ninety days, for $18,677, with interest at ten per cent. after due, which was secured by a like power of attorney. On January 24, 1887, judgment was entered by virtue of said power of attorney on the first said note for $7,789.70, the amount due thereon, with costs taxed at $6.87, and on the second said note for $23,268.42, the amount due thereon, with costs. On the same day executions were issued on said judgments to the defendant *Angle*, as sheriff, who, by virtue thereof, levied and seized upon the property of said Powers, consisting of a large stock of merchandise, hardware, and miscellaneous goods, contained in two stores and one warehouse of said Powers, at the city of Tomah, in this state. On the 28th day of January, 1887, said Powers duly made a voluntary assignment in writing of all his property, for the benefit of his creditors, to the plaintiff, *McCaul*, according to the statute. The said plaintiff, *McCaul*, as such assignee, brings this suit against the defendants, *Thayer* and *Angle*, alleging in his complaint the above facts, and also that, at the time of the entry of said judgments and the issuing of said execution, the said defendant *Thayer* knew, or had reasonable cause to believe, said Powers insolvent, and prays that said judgments and execution levies be set aside, and adjudged void; and that

said defendant *Thayer* account, etc. The defendants demurred to the complaint on the ground that it stated no cause of action, and the demurrer was sustained.

The said judgments having been entered upon powers of attorney, and the executions thereon having been levied within sixty days before the making of said assignment, the suit is predicated upon the last clause of sec. 2, ch. 349, of the General Laws of 1883, which gives to an assignee the power necessary to institute any action or proceeding to set aside and avoid any levy named in the first part of said . section, which reads as follows: "Every execution levy made under a judgment confessed against any such insolvent debtor within sixty days prior to any assignment for the benefit of creditors, *or under a judgment entered on a judgment note, by any such debtor, within sixty days prior to any such assignment,* . . . shall be void, and of no effect." The only question in this case presented on the appeal is whether the levy of the executions upon these judgments is void within the meaning of the last clause above quoted. It is not contended by the learned counsel of the appellant that this levy is void under the first clause, as a levy made under a judgment *confessed* against the assignor as an insolvent debtor, although the language is broad enough to include all judgments *confessed* in person, by *cognovit,* or by an attorney under a power from the defendant. If the last clause above quoted did not exist, such would undoubtedly be the construction held, and this levy would be void as being under a judgment confessed against an insolvent debtor within sixty days prior to his assignment. What, then, is the use, meaning, and construction of the last clause. Do the words "by any such debtor," qualify the entry of the judgment or the judgment note? Is it the judgment note by any such debtor or the entry of judgment by any such debtor within sixty days? It must be confessed that this language is defective and uncertain,

and perhaps strictly incorrect, and yet I think this clause is not void for uncertainty, but may be construed according to the ordinary rules of statutory construction.

It may be some light may be thrown upon the question as to what the words " by any such debtor " mean by the legislative history of the bill which finally became the law. The first bill made the judgment note given within sixty days of the assignment void, and also any judgment entered upon any judgment note (by amendment) *made* within six months prior to such assignment, void. Then the scheme was changed by substitute, and every execution levy under such a judgment was made void, and two kinds of judgments are mentioned: one of judgments *confessed*, in the first clause, and the other of judgments *entered* by power of attorney or on judgment notes, in the second clause. This substitute was amended by inserting between the words " confessed " and " within sixty days " the words " by any such insolvent debtor." Then this amendment was further amended by striking out the word "by" in that clause, and inserting the word " against," as the law now is. The second clause was amended by adding after the word " note " the words " by any such debtor," as it now is. It would seem that it was intended to make the bill, as to judgments entered upon judgment notes, like the original bill as first amended, when the word " made" was inserted. In other words, the substitute, which finally became the law, changed the first bill by including judgments confessed against such insolvent debtor within sixty days, and making the levy under the judgments void, and striking out judgment notes given within sixty days, and retaining the clause as to judgments entered upon judgment notes " made by such debtor within sixty days," etc., omitting the word " made " in the confusion of amendments. It was evidently the intention of the legislature that execution levies under judgments entered upon judgment notes made more than

sixty days prior to the assignment should be exempt from the operation of the act, as in the original bill. There does not seem to have been any design to change that clause, for the amendments are principally aimed at other parts of the section. The word "against" cannot be inserted in the place of "by" in this clause without violating the rule of construction that all the words must be retained that have meaning, and the maxim *expressio unius est exclusio alterius*. For the word "against" was inserted *ex industria* in the first clause, as to judgments confessed, and left out of the second clause, when the attention of the legislature was on that special subject.

It is evident that not very much aid can be derived from the history of the bill which finally became the law, but whatever significance there is in it is in favor of the construction that there is an *ellipsis* to be supplied by the word "made," or "given," or some equivalent word, before the word "by," and that the clause "by any such debtor" refers to the giving of the judgment note. When judgments *confessed* were made the subject of the first clause, there was no need of any other provision, for judgments confessed by an attorney under a power or on a judgment note were clearly included; so that there was no other reasonable use of any other provision, unless the legislature intended to limit the operation of that clause, and exclude judgments confessed within sixty days prior to the assignment on judgment notes, if the judgment notes were made more than sixty days prior thereto. All other judgments entered on judgment notes *made* within the sixty days fall within the first clause, or they are not provided for at all. The only use, therefore, of the second clause is to make a limitation of, or an exception to, the first clause. To do so, this construction must have been intended.

One cardinal rule of construction of a new act, and this act was new, is to have in view "the mischief to be cured."

What was the mischief or evil to be cured by this act? It is well expressed in the title, "An act to prohibit debtors from *giving preference to creditors*," etc. Before this act was passed preferences were allowed by the assignment itself, and by judgments confessed by debtors, and by sales, mortgages, hypothecations, liens, and other securities "made, given, or executed by an insolvent debtor." These were thought to be evils to be cured by a new act. All these were *acts of the debtor*, by which *he preferred* creditors and prevented "the equal distribution of [his] property among all [of his] creditors." This was the only mischief to be cured. The first bill, however, made the giving of judgment notes within sixty days prior to the assignment an evil practice of the debtor to be prohibited. But this was omitted in the bill, unless saved by the words "or other security." But the acts of the debtor himself were the evils to be cured, and the whole scheme of the bill, with the amendments, and of the law, seems to be to cure these evils and nothing more. The entry of judgment at the instance of the plaintiff or creditor alone, upon a judgment note given, as these notes were, many years before the debtor became insolvent or thought of making an assignment, is in no sense his act at the time of such entry. He is entirely passive. He can do nothing to aid it or to prevent.it. He has given a power of attorney, which is *irrevocable* because coupled with an interest. The entry of judgment on such a note by the creditor is not one of the evils or within the mischief to be cured, or named in the title, or within the purview of the law, without a strained and unreasonable construction of words used together with words not used but supplied.

But again, in connection with the mischief to be cured, the giving or receiving of judgment notes before the sixty days prior to an assignment, and the entry of judgment thereon within such sixty days, were not a mischief or evil.

The rights of the parties had become fixed by the giving of such a note when it was lawful and could not possibly change the condition of the debtor as to his creditors, or prevent the equal distribution of his property among them. The entry of judgment is a mere legal consequence of the giving of the judgment note. It is not a new act by the debtor, but a natural and legal result, beyond his control. The judgment, so to speak, is embodied within the note, and a necessary part and essential element of it, and the note naturally changes its form into a judgment of record, under the statute. But instead of such notes and the facilities of entering judgments thereon being an evil or mischief, such a construction of this act as would utterly discredit and destroy this class of mercantile and commercial securities in the business world would be an evil and a mischief of incalculable extent. A judgment note is a *security*, and a valuable one, to the holder, and it is so recited in the power of attorney. This method of business has grown into the very necessities of our business of banking, merchandising, commerce, and of buying and selling in all forms, and of exchange. It is the most common as well as the most valuable method of security in connection with commercial paper, and to destroy or discredit it would derange and unsettle the business of the country and seriously affect the public interests. Will it answer to attribute such a design or intention to the legislature in the enactment of a law to cure a mischief of far less magnitude than that which it creates?

Another rule of construction, among others sanctioned by this court in *Harrington v. Smith*, 28 Wis. 43, is "that every part of the statute must be viewed in connection with the whole, so as to make all parts harmonize if practicable, and give a sensible and intelligible effect to each, and not to place one portion *in antagonism* to another." The construction sought by the appellant's counsel would break the

harmony of the whole act, which consists in grouping to-
gether *the acts* of an insolvent debtor which shall be void
in view of his assignment. This exception to the whole,
of an act of a creditor warranted and justified by his con-
tract, and strictly lawful when made, would be antagonistic
to all other parts of the act.

Another rule is that "if possible, no clause, sentence, or
word shall be superfluous, void, or insignificant," and
" every clause and word shall be presumed to have been in-
tended to have force and effect." What possible effect could
the words " by any such debtor " have, if not in connection
with the making of the judgment note? It would be ab-
surd to apply it to the entry of judgment, for the debtor
does not, and cannot, enter it. This being so, we are forced
to supply the ellipsis by some proper word, to give clear
effect to the obvious meaning of words which have mean-
ing and which we may not reject, and this rule is well es-
tablished. *Nichols v. Halliday*, 27 Wis. 406.

With such a construction as is contended for by the ap-
pellant's counsel, the act would be a palpable fraud upon
the rights of such a creditor. The debtor cannot revoke
his power of attorney, which is inseparable from the note,
and by which judgment upon the note when due is secured
against all contingencies, or prevent the entry of judgment,
thereon in any *direct* way, but he can do so *indirectly* by
making an assignment. It cannot be that the legislature·
ever intended that the act should have such an effect and
work such a violation of the contract rights of the creditor.
The power of attorney to enter judgment upon the note·
when due, and which gives the note the name and charac-
ter of a *judgment* note, adds value to the note in the market
as well as intrinsically, like any other security, and that
value neither the debtor nor the legislature has any right
to lessen by prohibiting its use in entering judgment by any
pretext of technical or legal fraud, or by anything less than

actual fraud, which would avoid anything by which it is tainted.

But again, and lastly, it is not unreasonable to suppose that the legislature, in devising this law to prevent insolvent debtors from making a preference among creditors, and to make void certain acts of the debtor affecting his property, which would effect such preference, within sixty days prior to his making an assignment, did not intend to elaborate a new and original legislative scheme that had never had any former test or trial, but that the legislature had in view some law of similar objects and provisions which had been sanctioned by experience, and that the last general bankrupt law of the United States of 1867 was such a law. It contained analogous provisions as to the acts of preference made by the bankrupt within a certain time before filing his petition in bankruptcy. It was only such acts as were committed *or suffered* by the debtor that were made void. *Wilson v. City Bank*, 17 Wall. 473; *Clark v. Iselin*, 21 Wall. 360.

We are therefore of the opinion that the second clause of sec. 2, ch. 349, of the General Laws of 1883, should be construed as if it read: " Or under a judgment entered on a judgment note made by any such debtor within 'sixty days prior to any such assignment," and that the execution levy, made January 24, 1887, under the said judgments entered on the same day on said judgment notes made by the said Theodore S. Powers and J. T. Bears May 9, 1884, or more than sixty days prior to said assignment, is not void or within said act. It might have been as well to have adopted the able and lucid opinion of the learned judge who decided the demurrer in this case, for it was eminently satisfactory and conclusive, and I have perhaps added but little to its effect.

I have not noticed the argument based upon the use of a *comma* between the words " note " and " by," for I do not

McCaul, Assignee, etc. vs. Thayer and another,

know who put it there. The demurrer was properly sustained.

*By the Court.*— The order of the circuit court is affirmed, and the cause remanded for further proceedings according to law.

CASSODAY, J. January 24, 1887, the defendant *Thayer*, by virtue of two several promissory notes and warrants of attorney, all bearing date May 9, 1884, entered up judgments against said Powers, and others, for an amount in the aggregate of $31,090.86; and immediately thereafter. issued executions thereon to the defendant sheriff, *Angle,* who thereupon levied upon, seized, and took into his possession a large amount of personal property belonging to said Powers, who was then insolvent and indebted to other parties, and continued to hold the same. January 28, 1887, Powers made a voluntary assignment. of all his property for the benefit of his creditors to the plaintiff, *McCaul,* who, as such assignee, brings this action to set aside said judgments, executions, levies and seizures, and recover the property so seized, or the value thereof.

The question for determination is whether the preference obtained by such judgments, levies, and seizures, only four days before the completion of such assignment, is valid or void under ch. 349, Laws of 1883. The right to maintain this action in case they are void is not questioned. *Ibid.* The whole case turns upon the construction to be given to the first sentence of the second section quoted in the majority opinion. In construing the language of that sentence it becomes an imperative duty to first recognize the well-established rules of construction applicable to such a statute, and then to apply them to the language thus employed. As indicated in the majority opinion, the sentence is certainly not free from ambiguity. Even if it were, yet as the words employed are general, and not precise and definite, .

they are to be restrained by reference to the subject matter of the act, except in so far as a different intention may be therein expressed. *Hanson v. Eichstaedt*, 69 Wis. 538. This is in accordance with the saying of Lord BACON, which has become a maxim in the law, that "all words, whether they be in deeds or statutes or otherwise, if they be general and not express and precise, shall be restrained unto the fitness of the matter and the person." *Webster v. Morris*, 66 Wis. 395, and cases there cited; *Lessee of Brewer v. Blougher*, 14 Pet. 198. But here all agree that the language employed in the act is ambiguous, and hence open to construction. In such case it is said by PARKE, B., that "it is a very useful rule in the construction of a statute to adhere to the ordinary meaning of the words used and to the grammatical construction, unless that is at variance with the intention of the legislature to be collected from the statute itself, or leads to any manifest absurdity or repugnance, *in which case the language may be varied or modified so as to avoid such inconvenience, but no further.*" *Becke v. Smith*, 2 Mees. & W. 195. To the same effect, *Turner v. S. & B. R. Co.* 10 Mees. & W. 434.

This quotation is characterized by an English author of distinction as the embodiment of the "golden rule." Wilb. St. 111. It is there said: "This rule applies most forcibly when there is any ambiguity in the language employed by the legislature. In that case we are more especially bound to consider *what is the object* of the whole act, and what is the light thrown *upon that object* by every part of the statute. We may look chiefly at the preamble as stating 'the ground and cause of making the statute,' and as being 'a key to open the minds of the makers of the act and the *mischief which they intended* to redress.' But we must also examine *the context and the other clauses of* the act, for words which are obscure and ambiguous in one sentence may have a definite meaning in another." See cases cited

on pages 108–116, Id. As said by BEST, C. J.: "The meaning of the words of an act of Parliament is to be ascertained from the subject to which it refers, so that the same words receive a very different construction in different statutes. The intent of the legislature is not to be collected from *any particular expression,* but from a general view of the whole act of Parliament. These are not merely technical rules established by lawyers for the determination of questions arising on statutes, but they are maxims of common sense, the observance of which is necessary to conduct us to a right understanding of every kind of written instrument." *East India Interest,* 3 Bing. 196. So it was said by Lord TENTERDEN, C. J.: "In construing acts of Parliament we are to look, not only at the language of the preamble or of any particular clause, but at the language of the whole act. And if we find in the preamble or *in any particular clause an expression not so large and extensive in its import* as those used in other parts of the act, and upon a view of the whole act we can collect, from the more large and extensive expressions used in other parts, the real intention of the legislature, it is our duty to give effect to the larger expressions, notwithstanding the phrases of less extensive import in the preamble or in any particular clause." *Doe v. Brandling,* 7 Barn. & C. 660. See *Ryegate v. Wardsboro,* 30 Vt. 746; *Ogden v. Strong,* 2 Paine, 581–588. The same rules, in substance, have received the repeated sanction of this court. *Williams v. McDonal,* 3 Pin. 333, 334; *Nazro v. Mer. Mut. Ins. Co.* 14 Wis. 295; *Haentze v. Howe,* 28 Wis. 295; *Attorney General v. Railroad Cos.* 35 Wis. 557; *State ex rel. State Agr. Soc. v. Timme,* 56 Wis. 425–427.

These rules are strictly applicable to that portion of ch. 349, Laws of 1883, here involved. The object and purpose of the act were twofold: *First,* to prevent the giving of any preference to one creditor over another in any assignment, except for wages; and, *secondly,* to avoid preferences

obtained by creditors within the sixty days next prior to the making of any assignment. The first of these objects was definitely secured by the first section of the act, which declares that "any and all assignments hereafter made for the benefit of creditors, which shall contain or give any preference to one creditor over another creditor, except for . . . wages, . . . shall be void." The second object mentioned was manifestly sought to be secured by the second section of the act. Passing, for the moment, over the first sentence of that section, which is the one here particularly applicable, and we come to the second sentence, which declares that "every sale, mortgage, hypothecation, *lien or other security of any name or nature, made, given, or executed* of or upon *his* property, real or personal, *by an insolvent debtor, within sixty days* prior to the making of any such assignment, and in contemplation thereof or of insolvency, *shall be void and of no effect*, provided . . . the person benefited thereby, or receiving" the same, "knew or had reasonable cause to believe such debtor insolvent." Every one of the things thus "made, given, or executed" by the "*insolvent debtor*" within the sixty days mentioned are things done by, with, or to some of his property, and in a way to give a preference to one or more of his creditors over others. This portion of the section, thus avoiding certain securities given *by the debtor* within the sixty days prior to his making an assignment, is quite similar to the acts of bankruptcy by the bankrupt mentioned in the cases cited on the argument from the supreme court of the United States.[1] It was more particularly this portion of the section of which the writer hereof was speaking in the sentence quoted on the argument from *Backhaus v. Sleeper*, 66 Wis. 72.[2]

---

[1] *Wilson v. City Bank*, 17 Wall. 473; *Clark v. Iselin*, 21 id. 360,— cited by counsel for the respondents.— REP.

[2] The sentence quoted by counsel for the appellants was as follows: "True, as this court has heretofore indicated, the manifest purpose of these enactments was to uphold general assignments, and to prevent all

McCaul, Assignee, etc. vs. Thayer and another.

But, if the first sentence of the second section of the act in question is confined to levies or liens under such judgment notes and notes with warrants of attorney to confess judgments as are made or given by such insolvent debtor within sixty days prior to his making of an assignment, then it is entirely without significance, since they are fully covered by the sentence just quoted, which expressly avoids "every . . . lien or other security of any name or nature," so "made, given, or executed" by the "insolvent debtor" within the time named. Since such narrow construction would strip the first sentence of all significance, except as a mere repetition of certain things mentioned in the second sentence, it may be fairly inferred that a broader meaning was intended to be given to the language of the first sentence, unless restricted by the context or the object and purpose of the act. Had the object of the act been to secure preferences to such creditors as held judgment notes or warrants of attorney to confess judgments made more than sixty days prior to the making of such assignment by the debtor, then, to secure that object, there would have been very plausible, if not controlling, reasons for modifying the language employed by giving the narrow construction contended for. But such was not the purpose of the act. On the contrary, as this court has frequently declared, the object of the act was to prevent and avoid preferences within sixty days prior to an assignment, as above indicated. *Anstedt v. Bentley*, 61 Wis. 634, 635; *Batten v. Smith*, 62 Wis. 98, 99; *Wachter v. Famachon*, 62 Wis. 123; *Lang v. Simmons*, 64 Wis. 527.

In the language of the title, it was and is emphatically "An act to *prohibit debtors* from giving preferences to creditors, *and* to secure *the equal distribution* of property among

---

preferences (except for labor) through the active agency of the debtor, either by direct or indirect methods, at any time during the sixty days immediately preceding the assignment." — REP.

*all* creditors." The rules of law stated require the sentence in question to be so construed as to secure such equal distribution of property among *all* the creditors of the debtor, unless such construction would do violence to the language actually employed. As observed, to secure that object the language of the sentence may be varied or modified. The sentence reads: "*Every execution levy* made under a judgment confessed against any such insolvent debtor *within sixty days prior to* any assignment for the benefit of creditors, *or* under a judgment entered on a judgment note, by any such debtor, *within sixty days prior to* any such assignment, *and the lien* of any such judgments, *upon real estate*, shall be void and of no effect." As indicated in the majority opinion, the word "against," in the phrase " under a judgment confessed *against* any such insolvent debtor," and the word " by," in the phrase " under a judgment entered on a judgment note *by* any such debtor," are each inaptly used, or rather misplaced, through some inadvertence or want of accurate knowledge of the things spoken of, as shown by the history of the bill in the legislature. No lawyer would speak of a judgment being " confessed *against* any such insolvent debtor," nor of a judgment " entered . . . *by* any such debtor; " still, whether confessed by the debtor or entered by the creditor, yet the judgment would be against the debtor. But a mere change in phraseology in these respects would not clarify the sentence. The legislature has certainly declared that something therein mentioned, if made or acquired "within sixty days prior " to any such assignment, "shall be void and of no effect." What is the thing thus avoided and rendered of no effect? Manifestly, the thing which gave the *preference*, and not something which in itself gave no preference.

The mere making of a judgment note, or the giving of a warrant of attorney to confess a judgment, secures no preference, and hence the time of making the one or the giving

of the other is not within the scope or purpose of the act, and presumably not within the particular contemplation of the legislature in making the enactment; for such object of the act, in the language of one of the authorities cited is the " key to open the minds of the makers of the act and the mischief which they intended to redress." As observed, that mischief was the acquisition of a preference within such sixty days, and hence the sentence was presumably framed with the intention of suppressing it. · " Every execution levy made under a judgment confessed " or entered, " within sixty days prior to any such assignment, and the lien . . . upon real estate" thereby acquired, necessarily gives a preference, and hence such levy and lien are declared "void and of no effect." But the debtor has no agency in the entry of at least one class of such judgments, which gives such lien and is the foundation of such levy. It is that class which we are here dealing with. The seeming confusion as to the meaning of the sentence grows out of the fact that it includes execution levies and liens under two different classes of judgments, or rather judgments obtained in two different methods, with a lengthy description and a bungling arrangement of each. The statutory purpose is thus obscured, and hence weakened by such enumeration; but it is ascertainable, and therefore not destroyed. To secure the object of the act thus sought to be attained, however, the arrangement and punctuation may be varied to the extent of dispelling the obscurity without doing violence to the language. It will be found, by a close analysis of the sentence, that in order "to secure the equal distribution of property among *all* creditors " of the debtor, the legislature has, in effect, declared, that, "every execution levy made under a judgment confessed [against]" by " any such insolvent debtor within sixty days prior to any assignment for the benefit of creditors, . . . and the lien . . . upon real estate" thereby acquired, "shall be void, and of no

effect;" and also that "every execution levy made . . . under a judgment entered on a judgment note, [by]" *against* "any such debtor, within sixty days prior to any such assignment, and the lien . . . upon real estate" thereby acquired, "shall be void and of no effect." But the question may fairly be propounded, Why extend the words "within sixty days" to "*every* execution levy made" under a judgment confessed or entered within that period "and the lien . . . upon real estate" thereby acquired, instead of confining them strictly to levies and liens under such judgment notes and warrants of attorney to confess judgment only as are made or given by the debtor within the time named? The answer is twofold: *First*, the context of the sentence seems to extend it to "every" such levy and lien; and, *secondly*, in no other way can "the equal distribution" of the property of the debtor be secured "among *all* his creditors," which is the declared object of the act. This being so, "it is our duty," if we may adopt the language of Lord TENTERDEN, C. J., above quoted, "to give effect to the larger expressions, notwithstanding the phrases of less extensive import . . . in any particular clause," as only by so doing can we effectuate "the real intention of the legislature," as collected "upon a view of the whole act;" whereas, to give the words "within sixty days" the more narrow and restricted application is to defeat the declared object of the act, in thereby securing an unequal distribution of the debtor's property and giving to some of his creditors preferences over others.

Being firmly convinced that the true construction of the sentence in question is as above indicated, I am forced to the alternative of respectfully dissenting from the decision and opinion of the majority of the court.

TAYLOR, J.    I concur in the opinion of Mr. Justice CASSO-DAY.