STATE EX REL. CITY CONSTRUCTION COMPANY, Appellant, vs. KOTECKI, Comptroller, Respondent.

*February 24—February 27, 1914.*

*Municipal corporations: Special assessment certificates: Enforcement by "separate sale:" Statutes construed.*

1. Ch. 71, Laws of 1901 (secs. 926—135 to 926—138, Stats.), does not apply to the city of Milwaukee, since the charter of that city authorizes it to enforce special assessment certificates issued to contractors and others "by separate sale of the lands affected thereby under the authority of the city."

2. The words "separate sale" in sec. 926—135, Stats., do not mean a sale for the delinquent special assessment separate and apart from the sale for other delinquent city taxes, but a sale by the city treasurer under authority of the city separate from the sale made by the county treasurer under the general statutes.

3. Where the same word or phrase is used in different sections of the same statute for different objects and in different context, it need not be given the same meaning in each section.

4. The provision in sec. 926—135, Stats., for filing the special assessment certificates with the comptroller in cities of the first class merely related to the mode of getting the certificates into the tax roll and within the power of collection and sale by the city treasurer, and effected no change so far as a sale by the city treasurer separate from the county sale was involved.

APPEAL from an order of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

The appeal is from an order quashing an alternative writ of *mandamus.*

The alternative writ was issued to compel the comptroller of the city of Milwaukee to proceed under ch. 71, Laws of 1901, now secs. 926—135 to 926—138, Stats., by accepting, filing, and including in his statement of special assessments to be placed in the next tax roll of the city of Milwaukee a special assessment certificate issued to the relator, a contractor, after the special assessment evidenced by such certificate had been placed upon the assessment roll, levied against the property benefited, and carried into the tax roll for collection under the provisions of the city charter.

*Benjamin Poss,* for the appellant.

For the respondent there was a brief by *Daniel W. Hoan,* city attorney, and *Clifton Williams,* first assistant city attorney, and oral argument by *Mr. Williams.*

The order appealed from was affirmed February 27, 1914, and the following opinion was filed March 17, 1914:

TIMLIN, J. The question presented is whether the statutes above referred to apply to the city of Milwaukee. In order to correctly apply these statutes we must keep in mind the situation in this state with reference to city charters at the time of their enactment. Prior to March 26, 1901, there were in this state cities having authority to issue to contractors or others in payment of some contracts special assessment certificates. City charters with reference to delinquent city taxes could be divided into two classes: First, those containing a provision authorizing a tax sale of the lands affected by such taxes by the city treasurer under authority of the city, but where state and county taxes delinquent were returned to the county treasurer and the lands thereby affected sold by the latter treasurer under the general statutes of the state. This class included the charter of Milwaukee, the charter of La Crosse (ch. 162, Laws of 1887), the charter of Janesville (ch. 221, Laws of 1882), and the old charter of Green Bay prior to 1882, and perhaps other cities. Second, those requiring

all city taxes as well as all other taxes delinquent and unpaid to be returned to the county treasurer by the city treasurer and the lands affected thereby sold by the county treasurer under the general statutes of this state. This included the general city charter (ch. 326, Laws of 1889, now appearing as ch. 40a, Stats.), and the city charter of Sheboygan (ch. 254, P. & L. Laws of 1868), the city charter of Oshkosh (ch. 183, vol. 2, Laws of 1883), the charter of Manitowoc (ch. 275, P. & L. Laws of 1870, as amended), the charter of the city of Racine (ch. 313, vol. 2, Laws of 1876, as amended), the charter of Madison (ch. 36, Laws of 1882), and perhaps others.

There is but one tax sale expressly authorized by each treasurer in either case. In the first class of cities the sale by the city treasurer was made for all delinquent city taxes and special assessments together, and in the second class the sale was made by the county treasurer for all taxes and special assessments together. *Smith v. Vandyke,* 17 Wis. 208; *Smith v. Ludington,* 17 Wis. 334; *Dalrymple v. Milwaukee,* 53 Wis. 178, 10 N. W. 141; *Sheboygan Co. v. Sheboygan,* 54 Wis. 415, 11 N. W. 598; *Hoyt v. Fass,* 64 Wis. 273, 25 N. W. 45; *Heller v. Milwaukee,* 96 Wis. 134, 70 N. W. 1111; *Wis. R. E. Co. v. Milwaukee,* 151 Wis. 198, 138 N. W. 642; *Williams v. Eau Claire Co.* 134 Wis. 543, 115 N. W. 140.

In the cities falling under the second class above specified this in time led to confusion in the accounts between such cities and the county, because the city was entitled to a credit against the county for all taxes returned as unpaid and delinquent, which taxes thereafter belonged to the county. If the county thereafter collected thereon more than the sum due from the city to the county for unpaid county tax, the city was entitled to a credit for the excess. Sec. 1114, Stats. 1898. Special assessment certificates issued to contractors and unpaid were held to be unpaid taxes within the meaning of this section. *Sheboygan Co. v. Sheboygan, supra.* Where the

county did not collect the delinquent taxes but bid in at the tax sale, and there was no redemption, it thus became and remained the owner of and indebted to the city for a demand belonging to the contractor. See opinion of Circuit Judge GILSON in brief of counsel in *Sheboygan Co. v. Sheboygan, supra; Jenks v. Racine,* 50 Wis. 318, 6 N. W. 818.

Ch. 71, Laws of 1901, was entitled:

"An act to provide against charging to counties the special assessment certificates issued by cities to contractors in payment upon contracts, and for the enforcement thereof."

The whole purview of this act, omitting for the instant particular phrases found therein, is in harmony with this title. No such difficulty of accounting was possible with reference to cities falling under the classification first mentioned, because the certificates, being considered city taxes, never reached the county treasurer at all. This alone is a pretty conclusive indication that such cities were not intended to be affected by the act in question.

The first section requires interest to be computed on the assessment certificate at the legal rate from its date to the time when the city treasurer is required to make return of delinquent taxes. This points to the return mentioned in the general statutes made to the county treasurer, for the city treasurer makes no return of delinquent taxes to himself. The second section expressly requires a return to the county treasurer of the special assessment certificate as delinquent taxes by the city treasurer and contains no limitation, but the language is general and applies to all special assessment certificates covered by the act. It also requires that the county treasurer shall proceed as in other cases of delinquent taxes with reference to all special assessments covered by the act or included in its provisions. It also provides that the delinquent tax shall not be charged to the county nor credited to the city. The third section provides for redemption of all tax certificates issued upon a sale for delinquent special

assessment certificates included in the act. This redemption is to be made in the same manner that redemption may be made from general taxes not city taxes. This third section also provides for the issue of a tax deed by the county clerk upon all tax certificates of the kind last mentioned included in the act. The fourth section makes other provisions relative to such tax certificates and gives the owner and holder of the assessment certificate of sale issued thereon any and all other remedies given by law for the collection of the same or in the collection of other tax certificates of sale in this state, except that he shall have no right to recover from the city issuing the assessment certificate or the county issuing the tax certificate of sale. These provisions are inappropriate to cities of the class first mentioned but appropriate to cities of the second class mentioned.

"It is a well settled rule for construing statutes that particular words ought not to be permitted to control the evident meaning of the context." *Williams v. McDonal,* 3 Pin. 331.

"The court will inspect the whole act, and, if the true intention of the legislature can be reached, the false description will be rejected as surplusage, or words substituted, in the place of those wrongfully used, which will give effect to the law." *Palms v. Shawano Co.* 61 Wis. 211, 21 N. W. 77.

"We are more especially bound to consider what is the object of the whole act, and what is the light thrown upon that object by every part of the statute. We may look chiefly at the preamble as stating 'the ground and cause of making the statute,' and as being 'a key to open the minds of the makers of the act and the mischief which they intended to redress.' " *McCaul v. Thayer,* 70 Wis. 138, 148, 35 N. W. 353.

"The meaning of the words of an act of Parliament is to be ascertained from the subject to which it refers, so that the same words receive a very different construction in different statutes. The intent of the legislature is not to be collected from *any particular expression,* but from a general view of the whole act of Parliament. These are not merely technical rules established by lawyers for the determination of questions arising on statutes, but they are maxims of common

sense, the observance of which is necessary to conduct us to a right understanding of every kind of written instrument." Id., citing *East India Interest*, 3 Bing. 196.

We must distinguish between special assessments and special assessment certificates, and between special assessment certificates and tax certificates issued upon a tax sale. When a street was acquired and laid out by purchase or condemnation or any paving or other improvement thereon was paid for by the city out of city funds, there was usually or often a special assessment laid upon the abutting lands benefited by the improvement to the amount of such benefit, not, however, exceeding the cost to the city of the improvement or acquisition. In such cases of special assessments there was no special assessment certificate against the land issued to contractors or others. A special assessment in such case appeared on the tax roll in a separate column and was really part of the city taxes and collected with other city taxes. But responding to an economic condition formerly prevailing in which money was scarce and land was plenty, charter provisions were enacted authorizing the city to let contracts for certain local improvements and to oversee and manage the making of such improvements and to pay the contractor with certificates of a board of public works or of some other city officer, which certificates were a lien in favor of the contractor and against the abutting land benefited. The city assumed no liability, the contractor had no claim under this contract against the city, but must look to the collection of these certificates for his pay.

Manifestly a statute should have been made distinguishing special assessments of this kind from the other special assessments mentioned. But this was not done except in some cases like the city charter of Superior, which provided for an action by the contractor to foreclose this special assessment certificate, and perhaps that remedy would be open to him at common law before the tax sale. But even the latter statute did not

remedy the difficulty when the contractor did not avail himself of such remedy and the special assessment tax was returned delinquent to the county treasurer. Ordinarily, however, there existed charter provisions permitting or requiring the collection of these assessment certificates in the manner provided for the collection of city taxes, including other special assessments, that is, by placing the amount on the tax roll for collection by the city treasurer under his tax warrant and a return as delinquent tax in case no collection was made by the city treasurer.

Counsel for relator contends that the words "by separate sale of the lands affected thereby," found in the first section of the act in question, must be taken to mean a sale for the delinquent special assessment separate and apart from the sale for other delinquent taxes, hence that the statute applies to cities of the class first mentioned. This is merely a repetition of the fallacy exposed in *McCaul v. Thayer,* 70 Wis. 138, 35 N. W. 353, and an interpretation in conflict with the rules there laid down. It conflicts with the whole purview of the act; it breaks a sentence into parts; it ignores the words, "under the authority of the city," an integral part of the sentence in which the other words are found. It overlooks the fact that there was no city charter in this state so far as discovered which provided for sales by the city treasurer for delinquent special assessments separate and apart from city taxes; and it fails to discriminate between the two kinds of special assessments mentioned, one of which properly belonged with and constituted a part of the city taxes, hence could not be well separately sold. The statute should be read with reference to its leading idea. *State ex rel. Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Commission,* 137 Wis. 80, 85, 117 N. W. 846. We also consider such construction quite opposed to *Williams v. Eau Claire Co.* 134 Wis. 543, 115 N. W. 140, which holds that the mere absence of authority of the city treasurer to make any delinquent tax sale was

sufficient to bring that city within the purview of the statute in question. The construction contended for, on the other hand, would bring all cities in the state within the sweep of the statute in question. This might not be a bad result, but the statute bears indications that it was intended not for all but only for a class. We may here mention in passing that cities of the first class also falling within the first classification in this opinion have been relieved from some of their difficulties on this subject by ch. 203, Laws of 1905.

It is a legitimate argument in favor of the construction contended for by appellant that sec. 1 of the act in question made provision for filing the assessment certificate with the comptroller in cities of the first class and that there was but one city of the first class in this state, and that city was Milwaukee, whose charter authorized the city treasurer to make sales separate from the county sale for delinquent city taxes. But this provision for filing with the comptroller in cities of the first class merely related to the mode of getting these special assessment certificates into the tax roll and not at all to the return of delinquent taxes. Such filing brought the assessment certificate into the tax roll and within the power of collection and sale by the city treasurer. So that it effected no change in the former mode so far as a sale by the city treasurer separate from the county sale was involved. Compliance with this part of the statute still left the assessment certificate under the authority of the city treasurer, to be collected by him if possible; if not, to be embraced in his sale for delinquent city taxes. The relation in this case shows that at the time of demand upon the comptroller the assessment in question had reached and was upon the city tax roll for collection by the city treasurer under charter provisions. The case was therefore outside of this provision of the statute. Inferences from this provision of the statute tending to go beyond this are, we think, overborne by the general provisions of the act, which purport to regulate only sales by the county treasurer

resulting in confusion of accounts between the city and county.

In further aid of such interpretation counsel invokes the words of the second section, viz. that the county treasurer shall proceed, etc., and "sell said lands by separate sale for the nonpayment of such certificate." But in the first section the words "separate sale" are used to describe the class of cities affected by the act, in the second as a direction to the county treasurer. The object for which the words are used and the context differ in each section. Under such circumstances there is no room for claiming that the words in sec. 1 and those in sec. 2 should be given the same meaning.

"It is always an unsafe way of construing a statute or contract to divide it by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascertained from the context, the nature of the subject treated of and the purpose or intention of the parties who executed the contract, or of the body which enacted or framed the statute or constitution." 2 Lewis's Sutherland, Stat. Constr. 707, 708.

*By the Court.*—Order affirmed.

Marshall, Barnes, and Vinje, JJ., dissent.