McCARTHY, Appellant, vs. STEINKELLNER and others,
Respondents.

*November 13, 1936—February 9, 1937.*

For the appellant there was a brief by *Alexander, Burke & Clark,* attorneys, and *Frank P. Burke* and *Giles F. Clark* of counsel, all of Milwaukee, and oral argument by *Frank P. Burke.*

For the respondents there was a brief by *Walter J. Mattison,* city attorney, *Ronold A. Drechsler* and *John J. Dolan,* assistant city attorneys, and oral argument by *Mr. Drechsler* and *Mr. Dolan.*

The following opinion was filed December 8, 1936:

FOWLER, J.    The action was brought in the circuit court for Milwaukee county by James William McCarthy for a mandatory injunction directing the chief engineer of the fire department of the city of Milwaukee, and the board of fire and police commissioners of the city (hereinafter referred to as the "chief" and the "board," respectively) to permit him to withdraw an application theretofore made by him for retirement on pension upon his completion of the requisite term of service for retirement, and to reinstate him to the position of assistant chief engineer of the fire department of the city which he occupied at the time of the filing of the application. The chief threatened that if he did not so retire he would demote the plaintiff from that position to the position of cap-

tain in the department, without preferring any charges against him, and without giving him opportunity for trial before the board on charges preferred, and thereby coerced him into applying for retirement. The ultimate basis of the complaint is that the chief of the department had no power so to demote him. The defendants made answer to the complaint. The plaintiff demurred to specified paragraphs of the answer for "the reason that they do not state a defense." The court overruled the demurrer. The specific portions so demurred to are as follows:

"1. The defense set forth in paragraph 8 of title I of the defendants' answer reading as follows:

" 'Answering paragraph 17 of the complaint, deny that defendant Peter J. Steinkellner had no power to demote plaintiff without preferring charges against him and without trial.'

"2. The defense set forth in paragraph 9 of title I of defendants' answer reading as follows:

" 'Answering paragraph 23, of the complaint, deny the defendant Peter J. Steinkellner had no right or authority, as alleged or otherwise, to demote plaintiff.'

"3. The defense set forth in paragraph 10 of title I of defendants' answer reading as follows:

" 'Answering paragraph 24 of the complaint, deny that the threatened demotion of plaintiff by defendant Peter J. Steinkellner was an arbitrary, unlawful, illegal, unwarranted and unjustifiable action, or otherwise, on the part of said defendants.'

"4. The defense set forth in paragraph 2 of title IV of defendants' answer reading as follows:

" 'Alleges that by virtue of the conduct of the plaintiff, as alleged in his complaint and in this answer, is and was such as to make him guilty of laches.' "

Although the defendants do not present it, we are met at the outset with the proposition that a demurrer does not lie to separate portions of an answer or complaint. A pleading cannot thus be attacked piecemeal. Obviously, if it could be, no complaint or answer could withstand attack for insuffi-

ciency. A demurrer must go to the whole answer, or to the whole of a portion thereof pleaded as a distinct and complete defense. *McCall Co. v. Stone,* 124 Wis. 572, 102 N. W. 1053; *Gooding v. Doyle,* 134 Wis. 623, 115 N. W. 114.

The plaintiff urges that a demurrer lies to separate defenses set up by answer. This is correct. But before a demurrer can be interposed to a portion of an answer, that portion must be set up as a separate defense. The portions of the answer demurred to are not so set up in the answer before us. Before one can demur to portions of an answer which might be set up as a separate defense but which are not so set up, he must move to have the separate defenses so set up. *Danielson v. Garage Equipment Mfg. Co.* 151 Wis. 492, 139 N. W. 443; *Gilbert v. Hoard,* 201 Wis. 572, 230 N. W. 720.

The plaintiff claims that his demurrers meet the requirement of the court rule, sec. 263.17, Stats., which provides that the plaintiff may "demur to the answer or any *alleged* defense therein when it does not state a defense." The trouble is the portions of the answer demurred to are not alleged as defenses. Three of them are merely denials of portions of the complaint, and a denial is not a subject of demurrer. 49 C. J. p. 400, § 507, and cases cited in note 57. The fourth is aimed at a conclusion of law, incorporated in an alleged separate defense to the effect that the allegations of the complaint and answer make the plaintiff guilty of laches; and conclusions of law are not subjects of demurrer.

It follows that the demurrers were properly overruled. However, owing to the form of the order appealed from, this does not determine that the ruling of the court was in all respects proper. The order is as follows:

"It is ordered that said demurrer be and the same hereby is overruled and that the *defendants have judgment thereon, but with leave to the plaintiff to serve an amended complaint within twenty days,"* etc.

The portion of the order above italicized requires dismissal of the action unless the plaintiff amends his complaint. The trial court based this portion of the order on the only point presented to him by counsel, which was whether the chief of the department had the power to demote the plaintiff without preferring charges against him and giving him an opportunity to appeal from the order to the board and thus procure a trial by the board on the charges forming the basis of the removal. The plaintiff claimed below and claims here that the chief does not have such power, and the defendants there claimed and here claim that he has it. The trial court stated at the outset of a written opinion filed that this was "the question presented by the demurrers." Whether the trial court considered that this question was presented under the familiar rule that a demurrer to an answer for insufficiency searches the record and raises the issue whether the complaint states a cause of action does not appear. It is doubtful if that rule should be applied to a demurrer presented only to portions of an answer which are not subjects of demurrer. But whether the rule was in mind and whether if applied it was rightly or wrongly applied we are required to determine whether the complaint states a cause of action, else it will be dismissed even if it does state a cause of action. If it does state a cause of action, the latter part of the order must be reversed and the case must be remanded for determination of the issues raised by the complaint and answer. *Catts v. Henderson,* 81 Fla. 138, 87 So. 313. In the instant case the complaint could not possibly be amended so as to avoid or evade the proposition on which the trial court based its decision, and the situation is the same as if the appeal were from a judgment of dismissal as was the situation in the *Florida Case.* We therefore take up the proposition on which the trial court based its decision.

The power of the chief and of the board as well as the rights of all those in the service of the department, whether

officers or other members, are defined by ch. 586, Laws of 1911, as amended by ch. 475, Laws of 1919, and ch. 84, Laws of 1923.

The tenure of members of the department is fixed by sub. 9 of the amended act. "All members" of the department "shall continue to hold their respective *positions* and employments at the pleasure of" the chief, "subject to trial" as in the act provided. Other subsections of the act provide as follows: 11. No member of the department shall be discharged or suspended for more than thirty days by the chief except for cause and after trial as provided in the act. 12. When complaint is made to the chief he shall immediately communicate the same to the board and a trial shall be ordered by the board. 13. When the chief discharges or suspends a member for more than thirty days, he shall immediately report the same to the secretary of the board, together with a complaint setting forth his reasons for his action, and the member may appeal from the chief's order to the board by filing with the board a notice of appeal. 14. On a member's appeal the board shall serve the member with a copy of the complaint and a notice of the time of trial. 16. On the trial witnesses shall be put under oath. The trial shall be public. The accused shall have full opportunity to be heard in his defense, may have witnesses subpœnaed at the expense of the city and may appear in person or by attorney; all evidence taken shall be taken by a sworn stenographic reporter. 17. The board shall by a vote of a majority determine whether the charges are sustained by a preponderance of the evidence. If the board finds the charges are so sustained they shall determine whether the good of the service requires that the accused shall be permanently discharged, or suspended without pay for a period not exceeding sixty days or *reduced in rank*. If the board does not find the charges sustained, the accused shall be immediately "reinstated in his former position, without prejudice."

The decision and findings of the board shall be in writing and filed with the secretary of the board together with a transcript of the evidence received. 18. No member shall be deprived of *any salary* by suspension by the chief unless the charge against him is sustained. 19. Appeal from the decision of the board lies to the circuit court by any member "discharged, suspended or reduced" by action brought to review the order.

The powers of the chief besides those above enumerated are defined by the act as follows: 8. Whenever a vacancy shall exist in the office of first assistant engineer (the office which the plaintiff held) the chief shall nominate and with the approval of the board shall appoint a suitable person for such office, "subject to suspension and removal" as provided by the act. By sub. 23 of the act he is declared to be "the head" of the department, and is given power to regulate the department and prescribe rules for the government of its members.

This we believe covers all provisions of the act that bear in any way on the question before us. The three provisions bearing most directly upon the question are those of sub. 9 that all members shall continue to hold their respective positions and employments at the pleasure of the chief *"subject to trial hereinafter provided for,"* that of sub. 8 that when an assistant chief is appointed he is "subject to suspension and removal as hereinafter provided," and that of sub. 17 that the board may "reduce in rank" which is the only provision in the act respecting demotion of an officer. When an assistant chief is "reduced in rank" he is demoted, and when he is demoted he is *removed from his position.* This would seem to be self-evident and not to require argument or citation of authority to support it. However, *People v. Board of Education,* 78 App. Div. 501, 79 N. Y. Supp. 624; *Ibid.* 174 N. Y. 169, 66 N. E. 674; and *Kennedy v. Board of Education,* 82 Cal. 483, 22 Pac. 1042, expressly so hold. The pro-

vision that he is "subject to removal [demotion or discharge] as hereinafter provided" implies that he is not to be removed (demoted or discharged) except as expressly provided. There is only one provision for demotion, sub. 8, and that may be only after a trial before the board upon charges preferred by the chief. Also the provision of sub. 8 that the assistant chief is appointed "subject to suspension and removal as hereinafter provided," implies that he may not be removed except as expressly provided in the act. He may be removed either by demotion or by discharge from the force, but either such removal must be upon a trial before the board upon charges preferred by the chief. Removal from position, whether by demotion or discharge, can be effected in no other way. Had the plaintiff not submitted to the chief's threat he would have been removed from his position without charges being preferred, without trial and without action by the board, and only the board has power to remove an officer, whether by discharge or demotion, in case the officer desires a trial before the board.

It appears from the complaint that ever since the act was passed the chief has exercised the power to demote officers, and has claimed that power as of right. This under the rule respecting practical construction by the officers intrusted with the enforcement of a statute may be taken as an indication of intent on the part of the legislature, that the power to demote officers *temporarily,* that is until such time as the officer could procure a decision of the board upon a trial of preferred charges, remained with the chief. Before the act was passed he could demote at his pleasure. But thereafter he could only demote at his pleasure, subject to permanent demotion in the manner provided by the act, and the act provided for permanent demotion only by the board after trial. If the act were to be construed strictly, the chief could not demote even temporarily. The statute well warrants, and but for the practical

construction stated, would seem to compel the interpretation that reduction in rank could be effected, either temporarily or permanently, only by the board after a trial upon charges preferred upon discharge or suspension for more than thirty days. In deference to the intent of the statute indicated by practical construction, we yield to that construction as much as is possible under the language of the act itself. But when the act says that members shall hold their positions subject to trial as provided by the act, and officers shall be subject to removal as provided by the act, we cannot accede power in the chief to effect permanent demotion of an officer, especially of an assistant chief of the fire department for whose removal with that of inspectors and captain of police an especial provision is made, without the preferring of charges and trial before the board if he desires it. In case the officer demoted inexcusably makes no seasonable demand for a trial before the board, his demotion is of course effected by action of the chief alone. But when the demoted officer stands upon his rights under the act, as he does here, he is clearly entitled to a trial before the board as provided by the act. In no other way can the rights of the officers as expressly declared by the act be protected and enforced. An officer permanently demoted does not continue to hold his position, and sub. 9 of the act clearly provides that an officer is entitled to hold his position except on the conditions stated, and he cannot be permanently demoted from his position except upon those conditions.

We are not unmindful that the decision of the trial court went upon the view that before enactment of the 1911 act officers of the defendant held their positions subject to the pleasure of the chief, which gave him absolute power both of discharge and demotion, and the chief, after passage of the act, retained all powers that were not taken away from him by the act. Nor are we unmindful of the argument in support of this view that the defeat of bills in the legislature both

before and after the 1911 enactment supports the view that the legislature intended to leave the power of demotion without review in the hands of the chief. This argument is that such intent is shown by the defeat by veto of the governor of a bill in the legislature of 1909 which was the same as the bill enacted in 1911 except that it contained the phrase "or reduced in rank" in connection with the phrase of the act "discharged, suspended for more than thirty days," whenever this phrase occurred, and defeat by the legislature of subsequent bills to amend the 1911 act by insertion of the phrase "or reduced in rank" in connection with the phrase last quoted. The 1911 bill was introduced by the same member of the legislature that introduced the 1909 bill. It is not unlikely that he was moved in introducing the 1911 bill in form as he introduced it by the thought that in such form it accomplished the full purpose of the 1909 bill. The reason given for the veto of the 1909 bill was that some of its features were considered by the governor as unconstitutional. Nor is it unlikely that the subsequent legislatures were moved, in defeating the bills referred to subsequently introduced to amend the 1911 act, by the idea that the amendment was unnecessary, as the chief's power was already limited by necessary implication as the proposed amendment would expressly limit it. The power of permanent demotion in the chief contended for by the respondents is absolutely incompatible with the express language of the act that no officer shall be removed from his position except upon preference of charges and trial before the board as provided by the act. The object, purpose, and "leading idea" of the act were to secure permanent tenure of position by the members and officers of the department. That purpose, object, and idea are not to be defeated by an interpretation based upon the assumption that powers not taken from the chief by the act still remain with him. Maybe they would so remain, if retention of them would not defeat the

purpose and idea of the act to protect the continuance of officers as well as other members of the department in their positions. A statute should be construed to give effect to its "leading idea and the whole brought into harmony therewith if reasonably practicable." *State ex rel. Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 137 Wis. 80, 117 N. W. 846. Decisions of this court are numerous to the effect that the object sought to be reached by a statute must be considered in construing it. See 5 Callaghan's Wis. Dig. p. 4889, § 97. That is the most important consideration. *State ex rel. Marshall & Ilsley Bank v. Leuch,* 155 Wis. 500, 144 N. W. 1122. A statute should be construed with reference to its leading idea. *State ex rel. City C. Co. v. Kotecki,* 156 Wis. 278, 146 N. W. 528. The dominant rule in the construction of statutes is to discover and give effect to the legislative purpose. *State ex rel. Wis. Allied Truck Owners' Asso. v. Public Service Comm.* 207 Wis. 664, 242 N. W. 668.

It is urged by respondents that the power of permanent demotion by the chief is essential to the exercise of the power to regulate the department conferred by sub. 23 of the act and to the discipline of its officers. Whether it is so necessary was for the legislature to determine, and the act clearly indicates that the legislature determined otherwise. The act expressly provides for permanent demotion by the board when such demotion is deemed by the board for the good of the service. That is the only permanent demotion permitted by the act. Temporary demotion by the chief is only permissible upon the theory that the chief retains such powers as he possessed before the act was passed that are not taken away by express provisions of the act.

In the recent case of *Logan v. Two Rivers,* 222 Wis. 89, 267 N. W. 36, it was held that an officer discharged by a city manager who was without power to discharge him was entitled to restoration of his office. It is there said: "If in con-

ducting the proceedings he [city manager] was exercising a power which he did not possess, any act that he did pursuant thereto was a nullity." An officer deprived of position by unlawful demotion is as much entitled to restoration of his position as one unlawfully discharged is entitled to restoration in his office.

It was recently held in *Horlick v. Swoboda,* 221 Wis. 373, 267 N. W. 38, that the firemen's pension board of the city of Racine, which had charge of the administration of the firemen's pension fund of the city could not lawfully retire officers in the fire department competent to continue in service and who desired to do so, although they had served long enough to entitle them to retire from service and receive a pension. With equal, if not greater reason, the defendant chief could not lawfully compel the plaintiff to retire on pension against his will by threats of demotion, much less by threats of unlawful demotion, in case he did not apply for retirement.

As the decision of the case turns on the interpretation of our own statutory provisions, decisions of other courts are not authoritative or helpful. However, the case of *Bryan v. Landis,* 106 Fla. 19, 142 So. 650, 651, is quite similar in its facts and the statutes involved. A chief of police was removed from office because he refused on request "to be demoted by resigning . . . and accepting appointment as chief of detectives." The city charter involved gave to the city manager the power "to suspend the chief of police" for certain specified causes or "for any other just and reasonable cause." It required the manager on removal of the chief to certify the fact and the cause therefor to the police commission, who were required to "proceed to hear such charge and render judgment thereon." Removals by appointing officers, and the manager had the power of appointment, were prohibited except as by the charter provided. The removal by

the city manager was peremptory. It was held that the manager could only effect removal by proceeding as the charter prescribed; that the plaintiff was entitled to trial by the board on charges preferred by the manager; and that the plaintiff was entitled to be restored to his office.

We are also required in passing on the sufficiency of the complaint to determine whether it states facts sufficient to excuse the plaintiff from the application to retire and receive a pension which the complaint states he made and states was accepted. The plaintiff alleges that the application was made because of a demand of the chief that he have his application for retirement on file by June 1, 1936, and because of the threat of the chief that if he did not the chief would demote him from his position of assistant chief to that of captain. That on retirement as assistant chief his pension would be one half his salary of $270 per month, while if he was demoted to the rank of captain his pension on retirement would be based upon a captain's salary of $210 per month. That the plaintiff desired to remain in his position of assistant chief, and that by experience, age, health, strength, habits, character, and ability was competent and qualified so to remain. That on the chief making said threat he requested the chief to discharge him and file charges so that he might have a hearing before the board, but the request was refused. That at the time he filed the application he knew the chief had theretofore exercised the power of demotion and he believed that the chief had such power and believed that the chief would carry out his said threat if he did not retire, and so believing was coerced against his will into filing said application. That he was soon thereafter informed by counsel that the chief did not possess any power of demotion. That on being so informed the plaintiff in writing applied on June 4, 1936, to the chief and to the board for permission to withdraw his application, and asked to be reinstated to his position

of assistant chief, which application and request was on file and before the board at its regular meeting on said June 4th. That the application was denied by the board at it meeting on July 2d.

.We consider that these allegations bring the complaint within the rule respecting duress of municipal officers protected by tenure of office provisions recently enunciated in the cases of *Schuh v. Waukesha,* 220 Wis. 600, 265 N. W. 699; *Van Gilder v. Madison,* 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, wherein the court relieved members of the police departments of the defendant cities from their agreements to waive portions of their salaries under threat of discharge if they did not do so. An officer is as much entitled to protection against salary reduction by unlawful demotion by his chief as by unlawful attempts at reduction by other city officials, and as much entitled to restoration of other rights unlawfully attempted to be taken from him as to restoration of salary, even though through duress he for a short time submitted to those attempts.

We are of opinion that the complaint states a cause of action. The portion of the order appealed from directing dismissal of the complaint unless the plaintiff should amend is therefore erroneous, and must be reversed.

*By the Court.*—The portion of the order overruling the demurrers is sustained and the portion directing entry of judgment of dismissal if the plaintiff did not amend his complaint is reversed, and the record is remanded with direction to proceed to determination of the issues raised by the complaint and answer.

FAIRCHILD, J. (*dissenting*). I am of the opinion that the trial court reached the correct result, and I base my dissent from the decision overruling the order on the proposition that the law clearly fixes the power of demotion in the chief.

While examining the act with a view to arriving at the true intention of each part thereof, it is not to be supposed that an existing power purposely left out of the scope of the act is so within its operation as to be abolished or modified in company with those which are specifically mentioned. The language of the act affects only the power to discharge and suspend for a period of more than thirty days. All the other powers theretofore existing in the chief are still vested in him. The law provides that he shall have general supervision of the department and pointedly places upon him the duty of establishing and maintaining efficiency. The chief of the police department and the chief of the fire department of the city of Milwaukee are required to assume a great responsibility in conducting their respective departments. In order to enable them to meet their responsibility, each chief has been accorded extensive powers in the matter of organizing, developing, and maintaining efficiency in his department.

Some time prior to 1911, a division of opinion developed as to the wisdom of reposing completely unrestricted disciplinary power in these officers. On the one side were arrayed those who were of the opinion that the power was too great. On the other were those whose opinion was that the wiser course was to retain in the chief these methods of maintaining discipline. The latter believed that this so-called autocratic power would not be abused by a chief whose sole ambition should be and doubtless would be to have at the service of the people a department developed to its highest efficiency, and that the powers of discharge, of reducing in rank, of suspension, and of requiring forfeiture of pay would tend to keep a balance between loyalty, merit, and ability and the rewards thereof. This division of opinion found its way as is usual in a democracy into the legislature. Proposed legislation was introduced before the amendment now under discussion was adopted. These preliminary efforts, taken together

with subsequent history, show clearly that the legislature intended to leave in the chief, unaffected by any legislation, the power to reduce in rank. The limitation is addressed to the power to discharge and to suspend.

For the purposes of this dissent, the only proposed legislation, prior to 1911, to which I will call attention, other than to state that a similar effort was made in 1907, is that disclosed in Bill No. 58, S., introduced in the session of 1909. The bill as introduced (it encountered some opposition) was referred to the usual committees, and finally came before the legislature as Substitute Amendment No. 1, S., to Bill No. 58, S', section 1 of which read as follows:

"In all cities of the first class within this state having a board of police and fire commissioners, no member of the police force or fire department shall be discharged, suspended for a term exceeding thirty days, or *reduced in rank* by the chief of either of said departments except for cause and after trial as herein provided."

Section 7 read:

"Any member of either department discharged, suspended for a period exceeding thirty days or *reduced in rank* by the chief, may within ten days after the order hereinbefore provided is filed with the clerk of the circuit court of said county, bring an action in the circuit court of the county in which said city is located to review said order; . . ."

This bill passed both the senate and the assembly and was returned, without approval, by the governor. In the veto message, it was said:

"This act provides, in substance, . . . no member of the police or fire department shall be discharged, suspended for a term of thirty days, or *reduced in rank* by the chief of either of said departments except for cause after trial."

The veto was sustained. In 1911, the same senator who introduced Bill No. 58, S., in 1909 was the author of Bill No. 30, S., which became ch. 586, Laws of 1911, now before

us. In this bill there was no reference to the power of the chief to reduce in rank. This power had existed; it was a well-recognized method of enforcing discipline, and was provided for in general terms by ch. 378, Laws of 1885. The value of its existence evidently was one of the reasons for the opposition to such legislation in previous sessions of the legislature. Reduction in rank certainly was left out of ch. 586, Laws of 1911, and it follows that it was understood to have been left in the chief and unrestricted. No officer of either department ever questioned that interpretation and no one outside of the departments hesitated to accept it as the plain meaning of the statute. Practical construction of the law by all concerned, if we need look anywhere for an indication of legislative intent, for twenty-five years has been in accordance with this meaning. In fact, the existence of this intent was never called in question until after the act complained of in this case. Demotion has been used by the chief since 1911 in the same manner it was used before that time. If, as announced in the decision, the power to reduce in rank was taken away from the chief, the inquiry naturally arises: What became of it? Was it abolished altogether or simply retained as a method to be used by the board of fire and police commissioners to mollify a discharge or suspension?

At sessions of the legislature subsequent to 1911, at different times, those adhering to the opinion that disciplinary measures ought to be subject to the right of trial based on charges filed, sought to amend ch. 586, Laws of 1911. In 1923, for instance, there appeared Bill No. 429, A., which was a proposed amendment, containing a section reading:

"No member of the police or fire department shall be discharged, *reduced in rank,* or suspended . . . except for cause and after trial as herein provided."

This bill was defeated. The only change sought to be made by that bill was the one of writing into the law the words "re-

duced in rank." At least two other attempts of a similar nature were made, one in 1929 and one in 1935. The provisions in the 1935 bill, No. 434, A., proposed to amend subsections 11 and 13 of section 1 of ch. 586, Laws of 1911, so as to read:

"11. No member of the police force or fire department shall be discharged *or reduced in rank* or suspended for a term exceeding thirty days by the chief of either of said departments *respectively* except for cause and ~~after~~ *subject to* trial as herein provided.

"13. The chief discharging, *reducing* or suspending ~~for a period exceeding thirty days~~ any member of his force *as aforesaid* shall immediately report the same to the secretary of the board of fire and police commissioners together with a complaint setting forth the reasons for such discharge, *reduction* or suspension and the name of the complainant if other than the chief. Within ten days after such discharge, *reduction* or suspension the members so discharged, *reduced* or suspended may appeal from such order of discharge or suspension to the said board of fire and police commissioners. . . ."

This proposed amendment to the law appears to have been defeated in the assembly by a vote of 78 to 11. In the light of this legislative history and the terms of the statute itself, it seems to me that up to the present time, at least, there has been a determined attitude on the part of the legislature to impose upon the chiefs of the police and fire departments in the city of Milwaukee a responsibility to regulate their departments and discipline their members so as to maintain a high standard of efficiency in an agency in the service of the people. As a means to the accomplishment of that end, confidence has been reposed in the officials by the representatives of the people that they will properly use the powers which are vested in them. The powers are, among others: (1) To reduce in rank when in the discretion of the chief occasion requires it; and (2) subject to the right of trial, to discharge and suspend members of the department. We must presume that the suc-

cessive attempts to legislate upon this matter of "reducing in rank" were but a continuing effort on the part of people who believed that the wiser method of securing discipline was that of filing charges and having a trial by the board in every case, and, on the other hand, the opinion seems to have been better supported that the power of reducing in rank for failure to perform duties or lack of ability to discharge them while in a particular position should be left to the discretion of the chief of the department. The efforts prior to 1911 and the wording of the bill as presented in 1909 ought not to be overlooked. A well-recognized means of discipline which had been and still is used by the chiefs of the departments was not included in the legislation. It cannot be assumed that the legislature did not frame the law in 1911 with the purpose in mind of leaving that power of demotion unaffected. *Petition of State ex rel. Attorney General,* 220 Wis. 25, at p. 38, 264 N. W. 633.

For these reasons I disagree with my brethren.

I am authorized to state that Mr. Justice WICKHEM concurs in this opinion.

The following memorandum was filed February 9, 1937:

FOWLER, J. (*on motion for rehearing*). The respondents move for a rehearing on the ground that the opinion of the court shows a misapprehension by the court that the appellant was a "first assistant engineer" of the fire department, whereas he was only an assistant chief of the department, and quotes sub. 8 of the act involved, which relates to the appointment of the first assistant engineer by the chief with the approval of the board "subject to suspension and removal" as provided by the act, as bearing upon the rights of the appellant. The opinion shows misapprehension as stated, and counsel are correct in claiming that the subsection cited has no bearing upon appellant's rights.

However, aside from the erroneous statement and the subsection of the act relating to the "first assistant chief engineer," the opinion expresses the view of the court as to the appellant's right to retain his position under the other subsections of the act involved cited in the opinion, and fully warrants the relief to which the opinion holds the relator entitled. All references in the opinion to the appellant as "assistant chief engineer;" all portions of the opinion referring to the subsection of the act involved that relates to the "first assistant chief engineer;" and all statements in the opinion that imply that that subsection affects the appellant's rights, are withdrawn. The motion for rehearing is denied. No costs will be taxed upon the motion.