Town of Iron River, Appellant, vs. Bayfield County, Respondent.

*April 6 — April 27, 1900.*

(1, 2) *Demurrer* ore tenus: *Dismissal of complaint: Review on appeal: Bill of exceptions.* (3–5) *Taxation: Collection of delinquent taxes by county: Recovery by town: Presumptions: Purchase by county at tax sale.*

1. If it appears from the judgment roll that a judgment dismissing the complaint proceeded upon the insufficiency of the complaint to state a cause of action, a bill of exceptions showing further how

that question was raised is unnecessary to present it for review on appeal.

2. An order, reciting that the issue of law raised by the demurrer to the complaint came on to be heard and was argued by counsel, and directing that the complaint be dismissed with costs and that judgment be entered accordingly, was followed by a judgment reciting the order and dismissing the complaint. There was no written demurrer. A bill of exceptions showed that evidence had been taken before a referee and reported to the court before the making of the order for judgment, and did not show that the oral objection to any evidence under the complaint, made before the referee, had been renewed before the court. *Held*, that the judgment was an adjudication merely of the insufficiency of the complaint, and that an appeal therefrom presented that question only for review.

3. Sec. 1114, Stats. 1898 (providing that the county treasurer shall credit the amount of delinquent taxes to the town treasurer, and that such delinquent taxes shall belong to, and be collected for the use of, the county, "but if such delinquent taxes exceed the sum then due the county for unpaid county taxes such excess, when collected . . . shall be returned to the town treasurer for the use of the town"), precludes recovery of delinquent taxes by the town from the county, until collection in excess of the unpaid county taxes is in fact made.

4. No presumption arises that taxes on lands, returned as delinquent, have been collected by the county.

5. The purchase of lands at a tax sale, enjoined upon the county treasurer by sec. 1138, Stats. 1898, in case the land cannot be sold for the amount due, is merely a step towards collection, and is not a collection, of the tax within the meaning of sec. 1114. [Whether the taking of tax deeds by the county would bear a different aspect, not determined.]

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed*.

The plaintiff town filed as a claim with the county board of supervisors a petition setting forth that the county was indebted to the town in the sum of $45,461.54 for balance of account for delinquent taxes returned by the town treasurer of said town to the county treasurer of said county in the years 1893, 1894, 1895, 1896, 1897, and 1898 (being taxes for the years 1892 to 1897, inclusive), and asserting that the peti-

tion annexed was a true statement of all the delinquent taxes returned, and also a true statement of all credits to which the county is entitled, and alleging that the town had during all of that period paid all state taxes, county taxes, school fund income taxes, and all taxes whatsoever due from said town, except those credited to the county in said annexed statement. The statement annexed as an exhibit contained the totals of the delinquent tax lists for the years named, aggregating $77,049.84, and, as credits to the county, all of the general county taxes, and $383.72 for illegal tax certificates, aggregating $31,588.20.

The claim being disallowed, an appeal was taken to the circuit court for Bayfield county, where no written pleadings appear in the record. An order of reference was made to take proof and report. Before the referee the defendant objected to any evidence under the claim, for the reason that the claim and petition did not state facts sufficient to constitute a cause of action against the defendant. Evidence was then taken, principally in the form of stipulation as to what facts should be taken as proved for the purposes of the case. The bill of exceptions does not disclose the renewal of such objection before the court.

After the filing of said report, and a hearing before the court, the judgment roll discloses an order substantially as follows: "The issues of law raised herein by the demurrer of the defendant to the complaint of the plaintiff coming on to be heard, and the same having been argued by counsel, ordered, that the demurrer of the defendant to the complaint herein be sustained, and that the complaint be dismissed, with costs to the defendant, and that judgment be entered accordingly. By the Court." Whereupon judgment, reciting said order, was entered as of December 8, 1898, dismissing the complaint, and awarding costs to the defendant. From that judgment the plaintiff appeals.

The cause was submitted for the appellant on briefs by

*Ryan, Hurley & Jones,* and for the respondent on that of *A. W. McLeod.*

DODGE, J. Appellant urges that since the judgment roll discloses no written demurrer, and the bill of exceptions shows no renewal before the court of the objection to any evidence under the complaint, we should consider the judgment as one rendered upon trial of the facts, and should examine the evidence to ascertain whether it supports the judgment. Much confusion results from loosely designating as a demurrer *ore tenus* an objection to all evidence because the complaint is insufficient. As pointed out in *Smith v. Kibling,* 97 Wis. 207, and *Mandelert v. Superior C. L. Co.* 104 Wis. 423, such an objection is not a demurrer, in any sense, within the meaning of our statutory code as to pleading. It is merely an objection to evidence, and the court's decision thereon is merely a ruling on the admission of evidence, to be reviewed on exception and corrected like any other such ruling. True, in passing upon such objection, especially if he sustains it, the court is obliged to decide very much the same questions as would be raised by a general demurrer, and it has been very properly said, therefore, that such an objection is in the nature of a general demurrer made *ore tenus;* but our code recognizes no oral pleadings, and an order sustaining or overruling a demurrer, such as the statute authorizes, cannot properly be made on such an objection to evidence. The judgment dismissing the complaint, if one follows the sustaining of such an objection, results, not from the fact that a demurrer has been sustained, but from the fact that there is no evidence to establish anything except what is alleged in the complaint, which, for the purposes of his objection, the defendant admits to be true. With very plausible logic, accepted temporarily by this court in the first decision of *Dow v. Deissner,* 105 Wis. 386, it has been argued that, since such protest by defendant is only an ob-

jection to evidence, a ruling thereon, although judgment has followed and been appealed from, can only be reviewed if it be excepted to and both the ruling and exception brought into the record by a bill of exceptions. Upon reconsideration, however, and in deference to *Donkle v. Milem*, 88 Wis. 33, we finally decided in *Dow v. Deissner*, 105 Wis. 387, that if it appear from the judgment roll, including the judgment itself, that the latter proceeds upon the insufficiency of the complaint to state a cause of action, such fact is sufficiently authenticated to this court, without any bill of exceptions to show further how the question was raised. Upon the authority of those cases, we must hold that the judgment roll before us, which, of course, includes both the order for judgment and the judgment expressly based thereon, conclusively establishes that none of the evidence taken before the referee was received by the court, but that the judgment is merely an adjudication of the insufficiency of the complaint; that it decides none of the merits, save such as would have been raised by a general demurrer; and that such is the only question before us for review, namely, whether the complaint states facts sufficient to constitute a cause of action against *Bayfield* county.

Turning to the complaint itself, which by force of sec. 685, Stats. 1898, consists of the petition and annexed account filed as a claim with the county board, we find no allegations except that between March 17, 1893, and May 5, 1898, when the claim was presented, the town treasurer had returned to the county treasurer six annual returns of delinquent taxes, aggregating $77,049.84, and that during the same period all taxes payable to the county had been paid, except an amount of $31,588.20, to which it is conceded the county is entitled to credit as against the delinquent taxes so returned.

The relation of the town and the county to delinquent taxes, when returned, is controlled by sec. 1114, which pro-

. vides that the county treasurer shall credit the amount of the delinquent return to the town treasurer, and that such delinquent taxes shall belong to, and be collected for the use of, the county, " but if such delinquent taxes . . . exceed the sum then due the county for unpaid county taxes such excess, *when collected* . . . shall be returned to the town treasurer for the use of the town." This clause clearly precludes any right of recovery by the town until collection in excess of the unpaid county taxes is in fact made.

The complaint does not in terms allege that any of the delinquent taxes have been collected. Does any presumption of law supply that allegation? The presumption, at its utmost, is that official duties have been performed; that lands have been offered for sale, and such as were not purchased and paid for by individuals have been, by statutory command, purchased by the county. We cannot presume how much have been treated in either manner. Unless, as appellant urges, the latter act is a collection, there is, therefore, no presumption that real-estate taxes have been collected.

In construing the various provisions of title XIII, Stats. 1898 ("Taxation"), it must be continually borne in mind that the whole general purpose is the collection of revenue for the several subdivisions of the government: state, county, municipal, and school district. The formal acquisition of any lien or title in accordance with those provisions, whether by any municipal corporation or county or by any public officer, is primarily to continue or enforce the original right of the government against property, to the end that it may secure therefrom ultimately the *money* which such property or its owner ought to contribute toward governmental expenses, for with nothing but money can those expenses be paid. Such money, when received, by whichever of the collecting agencies, is then apportioned among the various governmental subdivisions according to their original

Town of Iron River vs. Bayfield County.

rights. In the enforcement of such liens it may be unavoidable — it is always undesirable — that actual title to property should be taken. The purpose of the law, nevertheless, is collection of money, and not acquisition of property; and clear language is necessary to justify inference of a legislative purpose that any step is to transpose the public body or officer from the position of a collecting agent into a proprietary, so as to substitute for the duty to account merely for the money ultimately received a duty to pay the ostensible price. In the light of such general purpose, it cannot be doubted that the purchase of lands at tax sale, enjoined upon the county treasurer by sec. 1138, Stats. 1898, is merely a step towards collection, and is not collection. Such view is emphasized by the fact that the county's control over the certificates is not that of an absolute owner. It cannot hold them to speculate, as could an individual, but must transfer them to any purchaser willing to pay the amount of the taxes which they represent. Sec. 1192. It has no option, but must, unlike an individual, purchase the property at all subsequent tax sales thereof.

Other considerations readily suggest themselves to render highly improbable a legislative purpose that, when the taxpayers of the several towns in a county neglect to pay their taxes, the county must supply the money, prominent among which is the practical impossibility of its doing so. The county has no means of obtaining money except from those very taxpayers. Another consideration was suggested in *Marinette v. Oconto Co.* 47 Wis. 216, 225, in the following words: "If the town treasurers do not collect money and town orders enough to pay the state and town taxes, the town will have a claim for the balance against the county when the same is collected under the provisions of sec. 1114; and, if they cannot be collected by the county, there would seem to be no injustice in saying that the loss should fall equally on the town and county, instead of on the county

alone." Surely the burden on counties of financiering is hard enough, which requires them to pay their own expenses out of proceeds of the bad debts owing the towns, without requiring that they supply money to purchase still other of such bad debts.

So far as this court has approached the question, its utterances are opposed to the idea that the taking of tax certificates at command of the statutes is a collection of the tax. *Finney v. Oshkosh,* 18 Wis. 209, 211; *Fletcher v. Oshkosh,* 18 Wis. 232; *Jenks v. Racine,* 50 Wis. 318; *Hoyt v. Fass,* 64 Wis. 273, 277; *State ex rel. Donnelly v. Hobe,* 106 Wis. 411. The reasoning in *Jenks v. Racine* seems entirely applicable, and well-nigh conclusive of the question now under consideration. The charter controlling the rights of the parties there provided for payment to the holder of a special assessment certificate " after the amount thereof shall have been received into the city treasury." The holding was that a taking by the city of tax certificates covering the amount of the assessment certificates was. not a receiving into the treasury of that amount, in reaching which conclusion much stress was laid on the fact that taking the tax certificates was compulsory upon the city, which is equally true of the county under sec. 1114. Whether taking tax deeds by the county would bear a different aspect, we cannot properly decide; for the complaint does not allege the taking of any, and we cannot presume such act, since the law only permits, and does not require, it. Sec. 1194, Stats. 1898. We are fully satisfied that the mere purchase of lands and receipt of the certificates is not a collection of the taxes within the meaning of that section. As a result, we must hold that the complaint fails to allege any collection of real-estate taxes. Whether there were any personal taxes included in the delinquent returns, or, if so, to what amount, or whether any of them have been collected, or charged back as uncollectible, the complaint is silent; and no pre-

sumption *omnia rite esse acta* can justify the conclusion that an amount thereof has been collected in excess of the $31,000 first to be retained by the county before any right to payment arises in the town. The complaint is insufficient, and judgment dismissing the same is right, even though it may have come about in an irregular manner.

In view of the manner in which the judgment was rendered, it is possible that rights may thereby be cut off, which, according to more regular procedure, might properly have been saved by amendment. We deem it advisable, therefore, to leave to the circuit court discretion to grant some relief against such result if plaintiff shall promptly apply for, and be found to merit, the same.

*By the Court.* — Judgment affirmed. The cause is remanded, with leave to the circuit court, in its discretion, to vacate the judgment and permit amendment of the complaint if plaintiff serve notice of motion therefor within twenty days after notice of filing *remittitur.*