Pinkerton, Respondent, vs. Fenelon, Appellant.

*January 29—April 30, 1907.*

*Deeds: Execution by person in official capacity: Title conveyed: Tax titles: Quitclaim by county.*

1. A quitclaim deed executed by one in an official or representative character is to be given no greater effect than is warranted by the authority conferred upon him.

2. Thus, a quitclaim deed signed in the name of a county by the county clerk pursuant to authority given him by the county board, under sec. 1193, Stats. (1898), to convey certain lands which had been tax-deeded to the county, is *held* to convey only the title and interest which had arisen under tax deeds taken out by the county upon certificates held at the time of the negotiation with the grantee, but no equitable title or interest which the county may have had prior to the tax sales in question.

APPEAL from a judgment of the circuit court for Price county: A. J. VINJE, Judge. *Affirmed.*

Action of ejectment to recover 160 acres of land in section 4, township 37, range 1 west, in Price county. The titles claimed by the respective parties were the same as those considered in *Cole v. Van Ostrand, post,* p. 454, 110 N. W. 884, the parties here being reversed, the plaintiff claiming the same titles as did Van Ostrand and the defendant the same titles as did Janet Macdonald Cole in that case. An additional issue, however, was presented by the pleadings in this case arising as follows: The defendant, by counterclaim, alleged that the transfer of tax certificates in 1895 from Price county to Winchester was void by reason of the failure to give notice of the intention to sell for less than the face, as required by sec. 664, Stats. (1898); that thereby plaintiff's grantor, in taking tax deeds, if he thus acquired legal title, became charged with a constructive trust to hold the same in favor of Price county; and that by the quitclaim deed executed in 1899 from Price county to the J. L. Gates Land Company, defendant's grantor, the equitable title so arising in Price county was transferred to that company, and from it to the defendant. Upon those grounds she prayed judgment, among other things, establishing such trust and decreeing the title to be in her as against the plaintiff. The court refused to admit evidence in support of these allegations and held defendant's title under her later tax deeds void on the same grounds as was the plaintiff's in *Cole v. Van Ostrand, post,* p. 454, 110 N. W. 884, and rendered judgment in the plaint-

iff's favor, after he had paid into court the amount of taxes, interest, and expenses incurred by defendant in connection with her tax titles. From such judgment the defendant appeals.

*Rublee A. Cole,* for the appellant.

*Asa K. Owen,* for the respondent.

The following opinion was filed March 19, 1907:

DODGE, J. With one exception, all the claims of the respective parties in this case have been considered and decided in the two cases argued herewith, but decided February 19, 1907, of *Cole v. Van Ostrand, post,* p. 454, and *Van Ostrand v. Cole, post,* p. 446. The distinguishing consideration in this case rests upon the claim made in the pleadings and offered to be established by the proof, that the sale of the tax certificates by Price county to Winchester, upon which were taken the tax deeds under which plaintiff claims, was void in law because the act of the county officers was unlawful in the absence of published notice; that such illegality was participated in by, and, at least constructively, known to, Winchester; and that, as a result, when he or his assignee, Price County Land & Improvement Company, acquired a formal legal title by a tax deed, the law at once, by implication, imposed thereon a constructive trust in favor of the county, which had remained the real owner of the certificates; whence arose at least an equitable, if not a complete legal, title to the land in the county. It is claimed further that the quitclaim deed from the county of all its right, title, and interest in the lands conveyed this title to defendant's grantor, and that she therefore is entitled to a decree of a court of equity declaring the title in her and removing the cloud thereon resulting from the recorded tax deeds to plaintiff's grantors. The argument is persuasive, but we shall not feel called upon to decide upon the soundness of its logic in any respect save one, namely, whether the quitclaim deed in the name of Price county to

the J. L. Gates Land Company served to convey such equitable title arising under the tax deeds to the Price County Land & Improvement Company, if any such equitable title was held by the county. Very probably a general quitclaim deed from an individual *sui juris* would, presumptively, and in the absence of any legitimate evidence to qualify it, be deemed to convey every shred of interest in the described land which he had. But a very different rule applies to quitclaim deeds executed by one in an official or representative character, for such deeds are not the deeds of the ostensible grantor any further than the person signing them was authorized to act on behalf of his principal. The very fact that the signers are dealing, not with their own property, but with that of some one else, which is apparent upon the face of the instrument, carries with it the implication and notice that the instrument is intended to have no greater effect than is warranted by the authority conferred upon those executing it. *Towle v. Ewing,* 23 Wis. 336; *Southwick v. Atlantic F. & M. Ins. Co.* 133 Mass. 457; *Dickerson v. Campbell,* 32 Mo. 544, 548; *Price v. King,* 44 Kan. 639, 25 Pac. 43; *Wright v. De Groff,* 14 Mich. 164; *Shurtz v. Thomas,* 8 Pa. St. 359; 9 Am. & Eng. Ency. of Law (2d ed.) 107.

In the present case the so-called deed is signed "Price County, by W. H. Lippels, County Clerk," a document of no legal validity whatever against anybody except so far as the county clerk was authorized to act for the county in making a quitclaim of its lands or some interest therein. No law gives the county clerk any such power or authority, save as it may be delegated to him by the county board. The extent to which the county board has power, generally, to sell or convey away real estate belonging to the county, or to delegate authority to any officer to execute instruments in pursuance of such power, must rest on secs. 652, 653, Stats. (1898). But this authority to deal generally with property of the county, real and personal, is differentiated by the statutes

themselves from the disposal of tax-deeded lands by sec. 1193, Stats. (1898); such differentiation being doubtless in recognition of the fact that even the taking of tax deeds by counties is not for the ultimate purpose of acquiring the land, but of enforcing tax burdens against it. *Iron River v. Bayfield Co.* 106 Wis. 587, 593, 82 N. W. 559. That section also confines the power of the county clerk to exercise the corporate power of the county to convey to cases authorized by the county board. Since, therefore, the signature of the county clerk to a deed in the name of the county is meaningless and forceless unless placed there in pursuance of express authority from the county board, it necessarily refers the grantee and all claiming under him back to the action of the county board. It has been held that such deed is not even evidence of title without proof of the county board's action. *Woodman v. Clapp,* 21 Wis. 355; *Bemis v. Weege,* 67 Wis. 435, 30 N. W. 938; *Semple v. Whorton,* 68 Wis. 626, 633, 32 N. W. 690.

From these considerations it is, of course, obvious that, however broad the terms of a deed signed by the county clerk, its construction and effect are limited to the purpose for which he was authorized to execute any deed at all, and the records of the county board on which it must rest for its validity become and are a limitation of the instrument. This, of course, necessitates an examination of the action of the county board which authorized this deed. When we turn to that, we find the whole transaction confined to the offer of a price for lands which had been tax-deeded to the county, an acceptance thereof, and a resolution authorizing the clerk merely to execute a deed of such tax-deeded lands. The transactions all proceeded under and pursuant to sec. 1193. The subject of purchase by the J. L. Gates Land Company and of the sale by the county was the tax title which they might acquire by tax deeds under certificates then held by the latter, in pursuance of which negotiation the two tax deeds declared on by

the defendant were taken out in the name of the county. It is made entirely clear by this record that there was no intent on the part of the county board to convey any other interests than such as had arisen under the tax deeds taken out by the county upon certificates held at the time of the negotiation, and such instrument, therefore, however ample its terms, could convey no other or different title which the county might have in such lands, any more than as if by some accident the county poor farm, or the county courthouse itself, had been assessed, sold for taxes, and covered by one of these tax deeds to the county, followed by a quitclaim deed under circumstances such as these. We apprehend no one would contend that such deed could be construed as adding to the invalid tax title the county's fee title to such county property. We must therefore conclude that, whatever equitable title the county may have had to these lands as between it and the Price County Land & Improvement Company or its grantee, the plaintiff, prior to the tax sales and tax deeds on which defendant's title rests, no such equitable interest or title was conveyed to the J. L. Gates Land Company by the quitclaim deed from the county, and hence that it is not vested in the defendant.

The invalidity of defendant's title as against plaintiff, but for this equitable claim, is established upon the grounds stated in the two accompanying cases above mentioned, and, since we now reach the conclusion that she has no such equitable title, the judgment in favor of plaintiff must stand.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied April 30, 1907.