SMITH, Plaintiff, vs. GRIMSHAW, Defendant: TOWN OF
BEAR BLUFF, Appellant, vs. KNUTSON and another,
Respondents.

*February 9—March 9, 1926.*

*Taxation: Collection of delinquent taxes in part: Right of county to retain amounts due it and state: Rights of towns and school districts.*

A county treasurer collecting taxes after a delinquent return has been made by the town treasurer is not required to pay over any part thereof to the town until a sufficient amount has been collected to satisfy the claims of the county, although the land is worth less than the amount of taxes assessed against it.

APPEAL from a judgment of the circuit court for Jackson county: E. W. CROSBY, Circuit Judge. *Affirmed.*

The plaintiff is treasurer of school district number one of the town of *Bear Bluff, Jackson County,* Wisconsin, *Alex Grimshaw* is treasurer of the town of *Bear Bluff* located within *Jackson County, Albert Knutson* being the county treasurer of *Jackson County.* The plaintiff began the action against the defendant *Alex Grimshaw* as town treasurer to recover the sum of $656.57, claimed to be due and owing from the town treasurer to the treasurer of the school district for unpaid taxes for the year 1923. The defendant

*Grimshaw* as treasurer of the town set up that in the year 1923 there was levied in the town of *Bear Bluff* for taxes, exclusive of drainage taxes, the sum of $4,434, consisting of the following items: $280.44 for state taxes; $918 for county taxes; $400 for county school taxes; $1,965.57 for school-district taxes; and about $850 for general town taxes; that of the amount so levied the sum of $2,143.20 was collected by the defendant as town treasurer in cash and town orders and the balance of $2,290.80 was returned to the county treasurer as delinquent; that as treasurer of the town he disbursed the following amounts: $280.44 for state taxes; $1,539.27 for school-district taxes, and the balance of $323.49 was represented by town orders presented in payment of taxes; that of the $2,290 returned as delinquent to the county treasurer nearly one half represented school taxes; that the county treasurer collected delinquent taxes in the sum of $1,107.45 and refused to pay the defendant any part thereof except the sum of $189.45, for the reason that the same belonged to the county for county taxes, and that by reason of the premises the defendant as treasurer of the town was unable to pay the school-district taxes in full.    Thereupon *Albert Knutson* as county treasurer of *Jackson County, Jackson County,* and the town of *Bear Bluff* were made parties defendant to the action.    The defendant *Grimshaw* then interposed and served a further pleading denominated an amended answer and cross-complaint, containing the same allegations and setting up the facts substantially the same as in the original answer.    The town of *Bear Bluff* served an answer and cross-complaint conforming substantially to the answer and cross-complaint of the defendant *Grimshaw,* and contained further allegations as follows:

"(1)  That the town of *Bear Bluff* is composed of swamp and overflowed lands, a large portion of which is within the limits of the Beaver drainage district.  That owing to

the cost of drainage many of the owners of land within said town have abandoned their lands and allowed the taxes, both general and drainage, to go unredeemed thereon. That the county of *Jackson* has purchased all the tax scrip on the lands unredeemed from taxes for the past fifteen years, but has refused and still refuses to take tax deeds therefor, because the lands, in the opinion of the county board, were not worth the amount of taxes due thereon, as this defendant is informed and believes. That said county of *Jackson* has on hand many thousands of dollars of such tax scrip extending back over a period of fifteen years.

"(2) That owing to the fact that the owners have failed to pay the taxes as above set forth, a large amount of the taxes have been returned as delinquent to the county treasurer of *Jackson County* for many years. That owing to this amount of delinquent tax, the town treasurer of said town of *Bear Bluff* has not collected sufficient moneys in the past few years to pay the state and school taxes required by law to be paid first, and leave any money in the hands of the town for the relief of the poor, the upkeep of highways, or for the payment of salaries of town officers. That moneys so paid in have so decreased that in the year 1924 there was not enough money collected to pay the state tax and school tax by at least $1,000.

"(3) That for many years the county treasurers of *Jackson County* have applied all moneys collected by them from the delinquent tax returns from the town of *Bear Bluff* to the payment of the county taxes, refusing to account to the town of *Bear Bluff* for any portion thereof. That due to this refusal, this answering defendant has been compelled to advance all school taxes and bear all losses arising from such delinquent returns.

"(4) That owing to the fact that the lands in the town of *Bear Bluff* on which taxes are unpaid are of no value, the tax scrip is of no value, and the amount of taxes levied against said lands is unpaid. That such loss should be divided between the school districts, the county of *Jackson,* and the town of *Bear Bluff* in proportion to the tax levied by each."

Thereupon the defendant *Albert Knutson,* county treasurer, and *Jackson County* demurred to the cross-complaint

of the town of *Bear Bluff* and also to the cross-complaint of the defendant *Alex Grimshaw,* both demurrers were sustained by the court, and the town of *Bear Bluff* now appeals from the order sustaining the demurrer to its cross-complaint and from the judgment dismissing the complaint.

*John G. Graham,* attorney, and *Wm. R. McCaul,* of counsel, both of Tomah, for the appellant.

*E. S. Jedney* of River Falls, for the respondents.

ROSENBERRY, J.   The collection of taxes is dealt with in ch. 74, Stats. 1923.   By the provisions of sec. 74.15 the town treasurer is required to retain in his hands the amount specified in his warrant, to be paid into the town treasury, and shall on or before the day specified in his warrant pay to the county treasurer the sum directed to be paid in the manner provided by law, and the town treasurer is required to pay over the full amount of the state tax on or before the first Monday of March of each year "though it may occasion a deficiency in the town, city or village taxes."   Sub. (2) provides:

"Out of the taxes collected the treasurer shall first pay the state tax to the county treasurer, and shall then set aside all sums of money levied for school taxes, then moneys levied for the payment of judgments, then all sums raised as special taxes in the order in which they are levied, then taxes for the payment of principal and interest on the public debt, then taxes for bridge purposes, then for fire purposes, then for streets and other public improvements, and lastly county taxes."

By sec. 74.17 it is provided that

"If the treasurer shall be unable to collect any taxes within the time prescribed by law he shall make out a statement of the taxes so remaining unpaid, distinguishing, by setting down separately, real estate, personal property, and income taxes, with a full and perfect description of such real estate from his tax roll, and the name of the person taxed, if

therein specified, and by setting down separately all public lands which are held on contract and all lands mortgaged to the state, and submit the same to the county treasurer. . . . The county treasurer shall carefully compare such statement, when submitted, with the tax roll and ascertain that it is correct."

Sec. 74.18 prescribes the form of the return. Sub. (1) and (2) of sec. 74.19 prescribe the details for the completion of the return and certain penalties for the failure of the town treasurer to comply with the law. Sub. (3) provides:

"All taxes so returned as delinquent shall belong to the county and be collected, with the interest and charges thereon, for its use; and all actions and proceedings commenced and pending for the collection of any personal property tax shall be thereafter prosecuted and judgments therein be collected by the county treasurer for the use of the county; but if such delinquent taxes, exclusive of the penalty provided by section 74.23, exceed the sum then due the county for unpaid county taxes such excess, when collected, with the interest and charges thereon, shall be returned to the town, city or village treasurer for the use of the town, city or village."

Sec. 74.23 provides certain penalties for the failure or neglect of the town treasurer to pay to the county treasurer the sums in his hands required by law to be paid to him.

The theory of the cross-complaint seems to be that there should be apportioned among the several municipalities the amounts collected by the county from the delinquent tax rolls, and that upon such an apportionment the county of *Jackson* would be found to be indebted to the town of *Bear Bluff*, and the town of *Bear Bluff* to the plaintiff as treasurer of the school district. The plaintiff has not appealed, so that the matter as between the school district and the town is not before us.

An effort is made to bring the case within the rule of *Marinette v. Oconto County*, 47 Wis. 216, 2 N. W. 314, and *Iron River v. Bayfield County*, 106 Wis. 587, 82 N. W.

559. In *Iron River v. Bayfield County* it was sought to sustain the contention that when the county purchases lands at a tax sale it amounts to a payment of the tax, and that the county is thereupon required to settle with the town as if the tax had in fact been paid in money; but the contrary was held, and it was said that the purchase of the lands at a tax sale was simply a step in the process of collection and not the collection itself; that there was no collection until the money had been in fact received.

In *Marinette v. Oconto County, supra,* it appears that the Statutes of 1858 authorized the acceptance of county orders equal to the amount of county taxes owing by the person presenting them, and it was held that when so presented and accepted by the town treasurer that the orders were paid. The court said:

"Having come to the conclusion that county orders received by a town treasurer in payment of county taxes, when so received, belong to the county and not to the town, and that the town treasurer cannot hold them for the use of the town, but must deliver them to the county treasurer in his settlement with such treasurer, it becomes unnecessary to consider the other questions which were discussed."

In the course of the discussion, however, the court made the following statement:

"If the town treasurers do not collect money and town orders enough to pay the state and town taxes, the town will have a claim for the balance against the county when the same is collected under the provisions of sec. 1114; and if they cannot be collected by the county, there would seem to be no injustice in saying that the loss should fall equally on the town and county, instead of on the county alone."

While there may be no injustice in saying so, we find no authority whatever in the law to support the proposition that as between the town and the county, after the delinquent return has been made by the town treasurer, that any sum

will thereafter become due to the town treasurer until a sufficient amount has been collected thereon to satisfy the claims of the county, for by the language of sub. (3) of sec. 74.19 it is only "such excess, when collected, with the interest and charges thereon, shall be returned to the town, city or village treasurer for the use of the town, city or village."

It is quite clear that the statute does not contemplate a situation such as is presented by the facts in this case; that is, that the land shall in fact be worth less than the amount of taxes assessed against it, or, in the language of the cross-complaint, "the land shall be of no value." This court cannot legislate, and while the situation presented by the pleadings in this matter appears to work a hardship to the towns involved, if relief is to be had it must come through the legislature. The county has apparently followed literally and exactly the directions of the statute.

*By the Court.*—Judgment affirmed.