TOWN OF BELL, Respondent, vs. BAYFIELD COUNTY, Appellant.

*November 13—December 8, 1931.*

298

For the appellant there was a brief by *Walsh & Morris* of Washburn and *William F. Morris* of De Pere, and oral argument by *Charles F. Morris.*

*John J. Fisher* of Bayfield, for the respondent.

FOWLER, J. The appellant county claims that the trial court erred: (1) In holding the county liable for the amount of the tax certificates against lands to which the county took tax deeds. (2) In refusing to offset against the town's claim the amount of the county taxes levied against the town in the years 1927, 1928, and 1929 not collected and paid over by the town treasurer. (3) In not properly credit-

ing to the county an item of $750 of school tax. The respondent town, on motion for review, claims (4) that the county was improperly credited with a discount arising from the county's selling tax-sale certificates for less than their face.

(1) The statute on which the town bases its right to recover is sec. 74.19, Stats., which provides for collection by the county treasurer of taxes on the delinquent tax list returned by the town treasurer, and that "if such delinquent taxes, exclusive of the penalty provided by section 74.23, exceed the sum then due the county for unpaid county taxes, such excess, when collected, with the interest and charges thereon, shall be returned to the town." Under this statute the town claims the right, not only to recover the amount by which the actual cash collections of the county treasurer on the delinquent tax list exceed the amount of the county tax for the years involved, but in addition to this the amount of the tax certificates against lands to which the county took tax deeds given in the above statement of facts as $9,279.47. The town's claim to this additional sum is based upon the holding of this court in *Spooner v. Washburn County*, 124 Wis. 24, 36, 102 N. W. 325, that the taking of a tax deed by the county operates as a collection of the amount of the tax certificates against the land.

If the statutes were now as they were when the *Spooner Case* was decided, the town would be entitled to recover on account of the county's taking tax deeds, as well as on account of receipts of cash by the county treasurer in payment of taxes on the delinquent list, unless the *Spooner Case* were reversed. But the legislature by ch. 405, Laws of 1929, amended sec. 75.36, relating to the taking of tax deeds by the county, by adding thereto the provision that "the county taking such (tax) deed shall not be required to pay any delinquent or outstanding taxes on such land . . . until the land is sold by the county." As there is no

proof that any lands to which the county took tax deeds has been sold by the county, the county claims it is not liable to the town for any taxes or tax-sale certificates against the lands at the time the tax deeds were taken. The town claims that the amendment of sec. 75.36 only applies to tax deeds taken by the county after its enactment and does not relieve the county from liability under sec. 74.19 on account of tax deeds taken prior thereto.

The general rule is that statutes will not be given a retroactive effect unless the intent of the legislature that they shall have such effect clearly appears. The language of the amendment is, "the county taking such deed shall not be required to pay . . . until the land is sold by the county." Appellant claims that the words "taking such deed" include all deeds whether the taking occurred before the enactment or afterwards, while respondent contends that to convey such meaning the language used should have been "the county taking or having taken such deeds."

The amending enactment should be construed in the light of the situation which it was obviously passed to remedy. It is common knowledge that at the time of the enactment a great acreage of land was held by the counties of the state under tax deeds, and that tax certificates to large amounts were outstanding against these lands at the time the deeds were taken for which the counties had not accounted to the towns and that the counties had no funds with which to pay amounts due the towns under the *Spooner decision*. It was the plain purpose of the enactment to relieve the counties from their statutory obligation to pay the towns the amounts due under the rule of that case until they should receive from the sale of the land money with which to pay. The necessity for such relief was so urgent and widespread that we infer that the intent of the legislature was to extend the relief as fully as might be and to apply the remedy to the situation which actually existed as well as to situations

arising in the future. We construe the amendment of sec. 75.36 as so applying unless constitutional objections prevent.

The respondent interposes the objection that so to apply the amendment would deprive the town of property without due process of law contrary to the XIVth amendment to the constitution of the United States. But the constitutional provision only applies to property held by municipalities in their proprietary capacity. Money raised by taxation even after it is collected "does not constitute property held by the counties in their . . . proprietary capacities which is subject to constitutional protection. These funds came (come) into their hands as the result of the exertion of governmental power belonging to the legislature, and it seems quite plain that by virtue of the state's control and supervision over its municipalities it may compel such municipalities to refund (or forego) these moneys to which they are not (deemed) entitled." *Will of Heinemann,* 201 Wis. 484, 230 N. W. 698. The disposition of moneys raised by taxation to which one governmental unit is entitled under existing law is subject to legislative control. Rights to such moneys which the legislature has given one municipality it may take away, and such moneys in the hands of one to which the other is entitled under existing statutes may as rightly be taken from the other and given to the one as it was given to the other in the first place. "No principle . . . is better settled than that 'whatever is given by statute may be taken away by statute,' except vested rights acquired under it, and except also that the statute must not be in the nature of a contract on the part of the legislature." *State ex rel. Voight v. Hoeflinger,* 31 Wis. 257, 263. Here no contract is involved and there is no vested right, were tax money a subject of such right, because the money claimed by the town had not been received by it, and no vested right of action for recovery of it existed because no demand therefor had been made prior to the commencement of the suit,

which would be essential to vest such rights under the rule of *Richland County v. Richland Center*, 59 Wis. 591, 594, 18 N. W. 497. The *Hoeflinger Case* and the *Richland County Case, supra,* clearly illustrate the effect of the enactment under consideration. In the first it was held that proceeds of swamp lands within two towns which had been by the legislature granted to the towns for construction of a bridge and which were received by the state and paid over to the county for payment to the towns prior to the passage of an act repealing the grant, could not be recovered by the town for the purpose of the grant. In the other it was held that license money received by the village to which under existing statutes the county was entitled for support of its poor but which had not been paid over by the village but appropriated by it to its own purposes, could not be recovered by the county after passage of an act by the legislature legalizing prior appropriations of such moneys by the licensing municipalities. Cases illustrative of the point under consideration are cited and some of them stated on pages 600, 601 of the *Richland County Case*. We are of opinion that the appellant's claim (1) must be allowed.

(2) The amount claimed by plaintiff as due the town from the county under the statute all accrued from transactions prior to 1927. The defendant claims the right to offset against this amount the unpaid county taxes levied against the town during the years 1927, 1928, and 1929. The amount of delinquent taxes returned by the town treasurer during each of those years exceeded the amount of the county tax levy against the town. The trial court held that the return of the delinquent list operated as payment of the county tax levied against the town, as between the county and town, and disallowed the credit claimed by the county.

The appellant's counsel cites no authority in support of his contention except general statements from two opinions of this court which in a general way refer to hardships upon

the county unless the towns bear a part of the burden incident to non-payment of taxes to the town treasurers. *Marinette v. Oconto County,* 47 Wis. 216, 225, 2 N. W. 314; *Iron River v. Bayfield County,* 106 Wis. 587, 594, 82 N. W. 559. But the holdings of these cases do not reach the question whether return of the delinquent list constitutes payment of the county tax against the town as between the two, or whether the county is entitled to a credit upon a town's claim for delinquent taxes collected by the county treasurer during a given period for uncollected county taxes returned by the town in the delinquent lists of a subsequent period. The quotation in the *Marinette Case, supra,* is as follows:

"If the town treasurers do not collect money and town orders enough to pay the state and town taxes, the town will have a claim for the balance against the county when the same is collected under the provisions of sec. 1114 (now sec. 74.19), and if they cannot be collected by the county there would seem to be no injustice in saying that the loss should fall equally upon the town and county instead of upon the county alone."

Of this statement, this court, speaking through Mr. Justice ROSENBERRY in *Bear Bluff v. Knutson,* 189 Wis. 353, 358, 207 N. W. 700, said:

"While there may be no injustice in saying so, we find no authority whatever in the law to support the proposition that as between the town and the county, after the delinquent return has been made by the town treasurer, that any sum will thereafter become due to the town treasurer until a sufficient sum has been collected thereon to satisfy the claims of the county."

The converse of this upon like reason is true—that no sum is due from the town to the county because no provision that renders any sum due exists in the statutes. If no sum is due, no sum can be subject of offset or credit.

In *Winchester v. Tozer,* 24 Wis. 312, it was held under statutes still in force that a town treasurer who has not been

able to collect all taxes called for by his warrant is entitled, after paying to the county treasurer the state taxes, to retain the amount specified in his warrant for town taxes, and required to pay to the county treasurer only the balance of the amount collected; and it is pointed out that if the town treasurer does not perform his duty in respect of the tax collection the statutes provide that the county treasurer shall proceed to collect the taxes and on such collection shall retain the amount of the state tax, then pay to the town officers entitled to receive it the amount of the town tax, and apply the balance if any for county purposes. In both of these contingencies the town is preferred to the county in allotment of the taxes collected. It is further pointed out that after proper return of the delinquent list by the town treasurer the county is preferred in the allotment of delinquent taxes paid to the county treasurer. The opinion of the case discusses the subject fully and is adhered to in *Wolff v. Stoddard,* 25 Wis. 503, without further discussion after "elaborate argument on motion for rehearing." The statutes referred to in the opinion are identical with the statutes now in force. It is said in *Sheboygan County v. Sheboygan,* 54 Wis. 415, 420, 11 N. W. 598, that "the principle of the statute is that the county shall assume all delinquent taxes . . . and reimburse itself out of the proceeds of the (payments of and) sales for such delinquent taxes." The holding of the *Winchester Case* is again adhered to in *Kellogg v. Winnebago County,* 42 Wis. 97, 103, and is recognized as the rule in the *Iron River Case,* cited by appellant. The rule is recognized as correct in many subsequent cases. *State ex rel. City Construction Co. v. Kotecki,* 156 Wis. 278, 146 N. W. 528; *State ex rel. Dammann v. Carney,* 158 Wis. 44, 147 N. W. 1030; *State ex rel. Donnelly v. Hobe,* 106 Wis. 411, 416, 82 N. W. 336. Nowhere in the statutes is any provision made for charging back against the town as a credit against a claim of a town that has accrued under

the statute any deficiency of county taxes subsequently occurring. We consider that the trial court was right in denying the credit claimed by the county.

(3) The appellant claims that it is entitled to a $750 credit by reason of a school tax item of this amount. A school tax of that amount was included in the delinquent tax list returned by the town treasurer in 1928. A payment of the amount was thereafter made by the county treasurer to the town treasurer, and the county is credited with the payment in the account as cast by the trial judge. This was a proper disposition of the matter. The appellant's contention is that as in the county's bookkeeping the county is charged with the item twice and only credited with it once, it should receive another credit to offset the double charge. The basis of this claim is that the county treasurer's system of carrying the account is to charge the town with the whole county and state tax levy, credit it with the amount paid in cash at time of the town treasurer's return and with all subsequent collections made by the county treasurer on the delinquent list, and charge the town with payments made to the town out of such collections. This carries the difference between the amount of the tax levy plus cash payments by the county to the town and the amount of the cash paid to the county by the town plus collections made by the county as an amount owed by the town to the county. This is not a correct record of the town's obligations to the county. If the county enters a charge against the town for the whole tax levy for state and county purposes, it should offset the charge when the town treasurer makes this return with the amount paid in cash and the amount returned by the delinquent tax list. This would balance that particular account. To keep a proper record to show whether the county owes the town, the county should charge itself with the amounts of its collections on the delinquent lists and credit itself with the amounts of the unpaid county and state taxes,

and if its collections exceed these amounts the difference will be the amount due the town. This is the way the account is cast by the findings of the trial judge.

(4) The statutes provide that the county board may authorize the county clerk to sell tax-sale certificates held by the county for less than their face upon directing the county clerk to give notice of intention to do so by publication in a newspaper. Sec. 75.34 (2). The county board on March 14, 1922, passed a resolution for sale of tax certificates at less than face, the details to be settled at a future meeting of the board to be held on May 9th, and directed the county clerk to publish the statutory notice. The clerk thereupon published a notice that the board so intended and that the sale would be made on May 9th at a meeting of the board then to be held. On May 9th the finance committee of the board negotiated with one Foster and reported to the board at this meeting that Foster had submitted two offers, one to take all certificates held by the county at sixty per cent. of their face and the other to take certificates to the face amount of $50,000, one half at face and one half at seventy-five per cent. of face, provided that on further investigation he found enough good certificates to warrant him in taking such amount. The board voted to accept the latter offer. This motion was reconsidered and tabled. The board then voted to authorize the chairman, clerk, and treasurer to enter into a written contract with Foster at face and less than face "as authorized and agreed by the board," subject to modification if found necessary. The expression "as authorized and agreed" manifestly refers to the terms specified in the resolution previously adopted that was tabled on reconsideration, and the expression in the final resolution "subject to modification" refers to modification in case Foster should not find good certificates sufficient to warrant purchase of certificates to the full face amount of $50,000. Pursuant to these proceedings the certificates were sold by

the county officers to a company Foster represented, one half at face and one half at seventy-five per cent. of face. The sum of $579.01 was charged to plaintiff town as its "share" of the discount. Apparently when the sales were completed the town was credited with the face of the certificates against lands in the town and then charged with a twenty-five per cent. discount on one half of the certificates.

The respondent contends that the proceedings of the county board were so irregular that they do not justify a sale of certificates for less than face and that the county should be chargeable with the face value. It is claimed that the last resolution above quoted attempts to delegate to the county chairman, clerk, and treasurer power to modify the terms fixed by the board if found necessary. The resolution manifestly was meant to authorize them to sell less than $50,000 of certificates to Foster if he could not find that amount of "good certificates." It is a fair inference that the board intended that if Foster would not take $50,000 worth the officers named should sell what he would take on the terms first specified for all, one half at par and one half at seventy-five per cent. This is fairly equivalent to an order to sell what could be sold on those terms and authorized whatever sales were made on that basis. The tax-sale records are not incorporated in the bill of exceptions and there is nothing in the record to show that the discount was improperly allowed or on what basis it was figured. In this situation the findings of the trial court must be upheld.

It is also contended that sales were made to a man named Fulton while the only authorization was to sell to Foster. But it appears that Fulton and Foster were both agents of the Foster Company. Foster negotiated for the company in the first instance and Fulton selected the tax certificates taken and all the sales were made on the understanding that both men represented the company. The certificates themselves are not in evidence. How they were indorsed does

not appear, but it is evident that all the sales were understood to be pursuant to the contract negotiated by Foster. We are of opinion that the sale of the certificates made by the county officers was properly authorized and was carried out according to the authorization.

The judgment of the circuit court should be modified by deducting therefrom the amount included therein by reason of the taking of the tax deeds by the county, and as so modified affirmed.

*By the Court.*—The cause is remanded with directions to modify the judgment in accordance with the opinion.