WATKINS, Plaintiff-Appellant, v. MILWAUKEE COUNTY CIVIL SERVICE COMMISSION, and another, Defendants-Respondents.

Supreme Court

No. 76–473. *Submitted on briefs February 28, 1979.—Decided March 27, 1979.*
(Also reported in 276 N.W.2d 775.)

412

For the appellant the cause was submitted on the brief of *Starobin & Abrahamson, S.C.,* of Thiensville.

For the respondents the cause was submitted on the brief of *Robert P. Russell,* corporation counsel, and *Patrick J. Foster,* principal assistant corporation counsel.

WILLIAM G. CALLOW, J.  This is an appeal from an order quashing an alternative writ of mandamus sought to compel the Milwaukee County Civil Service Commission[1] to reinstate the petitioner to his classified civil service job.  In quashing the writ, the trial court determined (1) that there was insufficient service of process, (2) that the Commission was not required to hold a hearing prior to accepting the petitioner's allegedly coerced resignation, and (3) that the relief sought was barred by laches.  Reaching the opposite conclusions, we reverse.

Claude Watkins, petitioner, was an ambulance driver for the Milwaukee County Institutions for fourteen years.  His petition alleges that on May 23, 1975, his superior, Clifton Drews, forced him to resign by threatening to

[1] Created pursuant to Chapter 63, Stats.

seek criminal charges of theft against him. On June 17, 1975, petitioner's attorney sent a letter to the Milwaukee County Corporation Counsel rescinding the allegedly coerced resignation and demanding reinstatement. On July 15, 1975, Corporation Counsel responded that he would not recommend reinstatement of the petitioner. On September 3, 1975, in response to a letter of August 22, 1975, from the petitioner's counsel, the Chief Examiner for the Milwaukee County Civil Service Commission advised petitioner's counsel that there was no provision in the Civil Service Rules for a hearing on the matter. On February 27, 1976, petitioner's attorney again wrote to the Corporation Counsel. On March 30, 1976, Corporation Counsel responded on behalf of the Civil Service Commission that the Commission would not honor petitioner's demand to be reinstated.

On May 19, 1976, the petitioner filed a petition for an alternative writ of mandamus in the Circuit Court for Milwaukee County, naming as respondents the Commission and Edwin A. Mundy, the Director of the Milwaukee County Institutions. The alternative writ issued the same day, ordering the County to show cause June 7, 1976, why the petitioner should not be reinstated. Anthony P. Romano, Chief Examiner of the Commission, was served the day the alternative writ issued. On May 20, 1976, the writ was served on Mundy. On May 28, 1976, the respondents filed a motion to quash the alternative writ on the grounds (1) that the court lacked subject matter jurisdiction, (2) that service of process was insufficient, (3) that the petition failed to state a claim on which relief could be granted, and (4) that the action was barred by the doctrine of laches. There is no notice of motion in the record. The record does not indicate that any hearing was held on June 7. On June 14–18, 1976, petitioner served the alternative writ on four members of the Commission. The fifth was on vacation. On Au-

gust 23, 1976, the Commission's motion to dismiss was heard; August 31, 1976, the order quashing the writ was filed. The trial court determined that it had no personal jurisdiction over the respondents because of insufficient service of process and that the claim was barred by the doctrine of laches. The court did not reach the merits of the petitioner's contention that the Commission was required to hold a hearing under sec. 63.10, Stats.

The petitioner moved the court for reconsideration of its order and for a decision on the merits. The court did not reconsider the order and ruled from the bench that there was no requirement, on these facts, that the Commission hold a hearing.

From the order quashing the writ, the petitioner appeals.

There are three questions presented: (1) Did the court obtain personal jurisdiction over the respondents by proper service in accordance with sec. 801.11, Stats.? (2) Does sec. 63.10, Stats., impose a plain legal duty on the respondents to hold a hearing before accepting the petitioner's resignation where the petitioner claims the resignation was coerced? (3) Is the action barred by laches?

### SERVICE OF PROCESS

The trial court determined that it lacked personal jurisdiction over the Commission because the appropriate party was not served. The petition, order, and alternative writ of mandamus was served on the Commission's Chief Examiner on May 19, 1976, and on the Director of County Institutions on May 20, 1976. Two weeks after the defendants moved to quash the writ, service was made on four of the five members of the Commission. The defendants maintain that (1) each Commission member must be served personally, and (2) service on the members following the motion to quash was untimely.

Sec. 801.11 (4), Stats., provides as follows:

"**801.11 Personal jurisdiction, manner of serving summons for.** A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:

" . . . .

"(4) OTHER POLITICAL CORPORATIONS OR BODIES POLITIC. (a) Upon a political corporation or other body politic, by personally serving any of the specified officers, directors, or agents:

"1. If the action is against a county, the chairman of the county board or the county clerk;

"2. If against a town, the chairman or clerk thereof;

"3. If against a city, the mayor, city manager or clerk thereof;

"4. If against a village, the president or clerk thereof;

"5. If against a vocational, technical and adult education district, the district board chairman or secretary thereof;

"6. If against a school district, school board, the president, secretary or clerk thereof; and

"7. If against any other body politic, an officer, director, or managing agent thereof.

"(b) In lieu of delivering the copy of the summons to the person specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office."

Petitioner contends that service on the Chief Examiner as ex officio secretary of the Commission[2] is sufficient under sec. 801.11 (4) (a) 7, Stats., dealing with "other" bodies politic. Respondents contend that the Commission is not a "body politic," necessitating individual service on each member of the Commission, and that, even if it is a body politic, the Chief Examiner was not an "officer, director, managing agent" for purposes of service of process.

Respondents argue that "body politic" embraces a governmental body exercising political functions through

---

[2] Sec. 63.02 (2), Stats.

elected officers. This interpretation is belied by the context of sec. 801.11(4)(a)7, Stats. At common law, "body politic" referred to " 'a social compact by which the whole people covenants with each citizen, and each citizen with the whole people, that all shall be governed by certain laws for the common good.' " *Munn v. Illinois*, 94 U.S. 113, 124 (1876). Under the common law definition, there is but one body politic: the state. However, under sec. 801.11(4), Stats., the legislature recognized other bodies politic by providing for service on "other bodies politic" independent of the state.

We deem the statutory construction canon of ejusdem generis to be a useful tool in construing sec. 801.11(4)(a)7, Stats. According to that principle of construction, "[w]here general words follow specific words in an enumeration describing the legal subject, the general words are construed to embrace only objects enumerated by the preceding specific words." (Footnotes omitted.) 2A Sutherland, *Statutory Construction*, sec. 47.17 (4th ed. 1973). Here, the phrase "other body politic" follows the enumeration county; town; city; village; vocational, technical and adult education district; and school district. The Commission fits well with the category described by the enumeration. The inclusion of vocational, technical, and adult education districts denigrates respondents' view that "bodies politic" embrace solely elective entities.[3] Vocational educational district boards, like the Commission, consist of appointed members who perform statutorily defined, important governmental functions entirely independent of the governmental entity which appoints members. This independence is of pri-

---

[3] We are aware that the legislature has specifically provided that the district board may sue and be sued in the name of the district. This express provision does not affect this analysis inquiring into the similarity of the Commission and the other entities enumerated in sec. 801.11(4)(a), Stats.

mary importance. To limit the aggrieved party to an action against the governmental unit which appointed the Commission membership would be ineffectual because a judgment or order directed against the county could not be enforced by the county or the court against the Commission.

In a different context, this court has held that cities and counties are bodies politic, *Madison v. Hyland, Hall & Co.*, 73 Wis.2d 364, 371, 243 N.W.2d 422 (1976), as are the "direct administrative arms of the state," *State ex rel. Dept. of Public Instruction v. ILHR*, 68 Wis.2d 677, 229 N.W.2d 591 (1975). In extending recognition of arms of the state as bodies politic, the legislature recognizes that various arms of government exercise independent governmental functions. By statutorily providing that there shall be a civil service commission in Milwaukee County and defining the duties and scope of authority, the legislature has directed the commission to act independently of the county board. Therefore, the commission must be subject to direct judicial proceedings in order to afford a forum to those persons allegedly aggrieved by unlawful acts of the commission. We observe that in *Karow v. Milwaukee County Civil Service Commission*, 82 Wis.2d 565, 263 N.W.2d 214 (1978), the respondent did not challenge jurisdiction in a similar mandamus proceeding. We conclude that the Commission is a "body politic" within the meaning of sec. 801.11(4)(a) 7, Stats.

There is no question that the Chief Examiner, as ex officio secretary of the Commission (sec. 63.02(2), Stats.), is "an officer, director, or managing agent" of the Commission under sec. 801.11(4)(a)7, Stats. Thus adequate service was effected when the alternative writ was served on the Chief Examiner the day the petition was filed.

This conclusion obviates the necessity of examining in detail the respondents' argument that service on the members of the Commission, following the motion to quash, was untimely. We note, however, that though the motion to quash was filed on May 28, 1976, prior to the June 14–18 service on the members of the Commission, there is nothing in the record to indicate the petitioner ever had notice of the motion to quash; and the Chief Examiner and four members of the Commission were served more than two months before the matter was heard by the court. Sec. 801.02(5), Stats.,[4] requires service prior to the hearing without specifying any specific time limitation. The respondents' argument that the court lacks jurisdiction because service on the Commission members was made after their motion to quash was filed is without merit. Additionally, we observe that the respondents offer no record to support a conclusion that they applied to the court on the original June 7, 1976, return date for the jurisdictional relief sought. Having accepted the August hearing date as a substitute for June 7, they substantively extended the time for service upon the Commission members.

## MANDAMUS

The issue on review of the granting of a motion to quash a writ of mandamus is whether the facts alleged in the complaint state a cause of action. *State ex rel. Dalton v. Mundy*, 80 Wis.2d 190, 195, 257 N.W.2d 877 (1977) ; *State ex rel. Farley v. Board of School Directors*, 49 Wis.2d 765, 769, 183 N.W.2d 148 (1971). Here the questions for the court are (1) whether sec. 63.10, Stats., should be interpreted to require a hearing before the

---

[4] "(5) An action of certiorari, habeas corpus, mandamus or prohibition is commenced by service of an appropriate original writ on the defendant named in the writ. A copy of the writ shall be filed forthwith."

Commission where the aggrieved employee claims his resignation was coerced, and (2) whether the petition involved here adequately alleges facts sufficient to establish coercion.

Petitioner urges the court to construe coerced resignations as a form of discharge, which would invoke the procedural mechanisms of sec. 63.10, Stats. Respondents argue that the provisions of sec. 63.10 apply only where charges are filed and that charges are not required to be filed where, as here, the employee resigned.

Sec. 63.10, Stats., provides procedures designed to ascertain through an impartial hearing whether the accusations brought against an employee demonstrate his unfitness for employment. The statute reflects the legislature's determination that the employee has a legitimate interest in not being "wrongly deprived of his or her livelihood and not suffering injury to reputation on the basis of charges which might prove unfounded." *Karow, supra* at 573.

Resignation obtained by coercion poses serious possibilities of abuse. "[A] separation by reason of a *coerced* resignation is, in substance, a discharge effected by adverse action of the employing agency." (Emphasis in original.) *Dabney v. Freeman,* 358 F.2d 533, 535 (D. C. Cir. 1966). Treating coerced resignations as discharges for purposes of hearings under sec. 63.10, Stats., fits well with the policies of security of tenure and impartial evaluation which underlie the civil service system. The strength of this policy is underscored by the language of sec. 63.04, Stats., which provides that "no person shall be . . . removed from the classified service in any such county [which has adopted the civil service system], except in accordance with the provisions of said sections [secs. 63.01 to 63.16, inclusive]."

This court has recognized that reinstatement may be an appropriate remedy where resignations are allegedly

obtained by coercion in *McCarthy v. Steinkellner,* 223 Wis. 605, 270 N.W. 551 (1937). In that case an assistant chief engineer of the fire department of the city of Milwaukee alleged that he was threatened with demotion if he did not retire. He requested a hearing on the matter and was denied one. The plaintiff, fearing that his pension would be cut if he were demoted, filed the application to retire. After being informed by counsel that his supervisor did not have the authority to remove him without a hearing, the plaintiff asked and was denied permission to withdraw his application and be reinstated. The court stated:

"We consider that these allegations bring the complaint within the rule respecting duress of municipal officers protected by tenure of office provisions recently enunciated in the cases of *Schuh v. Waukesha,* 220 Wis. 600, 265 N.W. 699; *Van Gilder v. Madison,* 222 Wis. 58, 267 N.W. 25, 268 N.W. 108, wherein the court relieved members of the police departments of the defendant cities from their agreements to waive portions of their salaries under threat of discharge if they did not do so." *Id.* at 618.

Respondents' theory of the case is that the petitioner resigned voluntarily, fully advised of the consequences which would ensue if he chose to stay on. The voluntariness of the resignation is a question of fact to be resolved by the Commission upon a sufficient allegation that the resignation was coerced. The petitioner alleged that "[o]n May 23, 1975, CLIFTON DREWS, an employee for Milwaukee County, caused the Plaintiff, under threat of criminal action, to execute a resignation from Milwaukee County." By this allegation petitioner explained that his resignation was not voluntary. The allegation points to the specific threat petitioner claims triggered the resignation. It does not appear from the face of the petition that the threat was trivial or entirely without substance.

The policy of sec. 62.10 of the civil service statute is to limit the number of persons who may terminate an employee and to test the justification of the termination. By permitting employee Drews to unilaterally handle his complaint against the petitioner, the Commission improperly delegated the authority given it by the legislature to be the sole arbiter of employee related complaints. *State ex rel. Sullivan v. Benson,* 211 Wis. 47, 247 N.W. 450 (1933). When an employee resigns and adequately alleges the resignation was coerced, a timely demand for reinstatement or a hearing requires the Commission to schedule a hearing.

### LACHES

In their motion to quash, respondents asserted that petitioner was guilty of laches in bringing the writ. In his order quashing the writ, the trial judge reasoned that an analogy to the time limit on bringing a writ of certiorari was proper and, following the ruling with regard to certiorari in *State ex rel. Czapiewski v. Milwaukee Civil Service Commission,* 54 Wis.2d 535, 196 N.W.2d 742 (1972), held that laches barred the writ because it was instituted more than six months after the events which led to petitioner's unemployment. Certiorari operates to review judicial hearings already held, while the mandamus action brought here was to compel a hearing which the Commission had refused to hold. The six-month limitation for writs of certiorari was fashioned by the trial court from an analogy to statutory certiorari, however, and the analogy is misplaced.

For laches to arise, there must be unreasonable delay, lack of knowledge on the part of the party asserting the defense that the other party would assert the right on which he bases his suit, and prejudice to the party asserting the defense in the event that the suit is main-

tained. *Paterson v. Paterson*, 73 Wis.2d 150, 153, 242 N.W.2d 907 (1976). Here the petitioner was in sustained contact with the Commission until the petition for the writ was filed. The petitioner informed the Commission at the time he rescinded his resignation that litigation would be commenced if a hearing were not granted. There is no evidence that the respondents would be prejudiced by being required to hold a hearing on the issues surrounding petitioner's resignation.

*By the Court.*—Order reversed and cause remanded with instructions to remand to the Milwaukee County Civil Service Commission to conduct a hearing within twenty-one days of the date it is remanded to the Commission.