TRANSPORTATION CYBERNETICS,
INCORPORATED, Plaintiff–
Appellant,

v.

FOREST TRANSIT COMMISSION, FOR-
EST COUNTY, WISCONSIN, Town of
Tipler, Wisconsin, et al., Defendants–
Appellees.

No. 90–2713.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1991.

Decided Nov. 26, 1991.

As Amended on Denial of Rehearing
and Rehearing En Banc
March 11, 1992.

Ross A. Anderson (argued), Patrick B. Howell, Frisch & Dudek, Milwaukee, Wis., Dennis M. Grzezinski, Milwaukee, Wis., for petitioner-appellant Transp. Cybernetics, Inc.

Ted Tornehl (argued), Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., Terrence J. Byrne, Wausau, Wis., for respondent-appellee Forest Transit Com'n.

Joseph D. McDevitt, John A. Birdsall, Ted Tornehl, Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., for respondent-appellee Forest County, Wis.

Ted Tornehl, Borgelt, Powell, Peterson & Fraugen, Milwaukee, Wis., Robert A. Kennedy, Crandon, Wis., for respondent-appellee Town of Tipler, Wis.

Joseph D. McDevitt, John A. Birdsall, Ted Tornehl, Borgelt, Powell, Peterson & Fraugen, Milwaukee, Wis., Fred W. Kawalski, Whiting & Kawalski, Antigo, Wis., for respondent-appellee Town of Long Lake, Wis.

Before CUDAHY and MANION, Circuit Judges, and WILL, Senior District Judge.*

CUDAHY, Circuit Judge.

Although centered around a disputed contract, this case involves subtle questions of jurisdiction, *res judicata* and the writ of mandamus. The basic facts can be summarized briefly, with necessary details fleshed out as our analysis requires.

Forest County and the towns of Tipler and Long Lake, all Wisconsin municipalities, together contracted in 1979 to create the Forest Transit Commission (FTC), a body whose purpose was to oversee the rehabilitation and maintenance of a short line rail service for the benefit of the citizens of those municipalities. FTC quickly employed Transportation Cybernetics, Inc. (TCI), an Illinois corporation, to carry out the commission's task. Included in the contract was an arbitration clause. In March 1984, FTC terminated its contract with TCI.

Following its termination, TCI brought an arbitration action for compensation it believed FTC still owed. TCI served notice of the arbitration on Forest County, Tipler and Long Lake, but only TCI and FTC were named parties. The arbitrator eventually found for TCI in the amount of $403,336.56. The company then petitioned the district court for confirmation of the award under 9 U.S.C. § 9 (1988).[1] In addi-

---

* The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. Both parties believed that the district court's jurisdiction was based on the Arbitration Act itself. We believe they are mistaken. The Supreme Court has noted that sections 3 and 4 of the Arbitration Act do not supply federal question jurisdiction. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). The Ninth Circuit has applied this conclusion to section 9 actions as well, rejecting the existence of any distinctions between that section and the other two. *General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). This court has also stated, although in dictum, that section 9 requires independent federal jurisdiction. *Comprehensive Accounting Corp. v. Rudell,* 760 F.2d

tion to FTC, TCI sought to have the award confirmed against the three municipalities. On December 12, 1989, the district court granted TCI's petition to enforce the award, but only against FTC, and it entered judgment to that effect. Its rationale will be of some importance to our own analysis. The district court reasoned that its role in enforcing an arbitration agreement was merely to confirm, or refuse to confirm, the award against parties to the arbitration. Citing *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963), the district court determined that it could not, under the authority of 9 U.S.C. § 9, enforce an award against a nonparty. It went on to decide that because FTC was a quasi-municipal corporation, with "identity and powers ... sufficiently distinct from the municipalities it serves," its promoting municipalities were not the same party. Dec. and Order at 8 (Dec. 12, 1989). The district court therefore enforced the award only against FTC.

TCI next moved the district court under Fed.R.Civ.P. 69(a) for an order in the nature of mandamus to require the Clerk of Forest County to levy a tax for the satisfaction of the judgment entered against FTC. On the recommendation of the magistrate judge to whom the case was referred, the district court denied this motion on July 3, 1990. Its reason for doing so was that its December order denying enforcement against Forest County resolved this very question in the county's favor. TCI appealed the denial, and only Forest County responded.

■ The first knot we must untangle is jurisdictional. Forest County argues strenuously—so strenuously that it fails to address the arguments for affirmance—that we have no jurisdiction to hear this appeal. The county's argument takes several different forms. First, it contends that the district court's December order was a final

order, not its July order. Thus only the earlier order was appealable. Forest County supports this contention by citation to *Lojuk v. Johnson*, 770 F.2d 619 (7th Cir. 1985), *cert. denied*, 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986). We take no issue with *Lojuk* or the myriad cases since then in which this court has reminded litigants that, with few exceptions, they must await the entry of a final judgment before appealing. However, these cases are completely inapposite to the question before us, which involves the scope of an appeal taken from an order entered *after* a final judgment has been issued.

■ Anticipating our response to its first contention, Forest County presses the argument that "[o]rders entered in a *post-judgment* setting are not 'final' unless they 'dispose completely of the issues raised' in the lawsuit." Appellee's Br. at 8 (quoting *Motorola, Inc. v. Computer Displays Int'l, Inc.*, 739 F.2d 1149, 1154 (7th Cir.1984)). Through selective quotation the county thus incorrectly describes our decision in *Motorola*. Rather than insist that the post-judgment order dispose of all issues in the lawsuit, *Motorola* requires only that the order dispose of all issues raised in the post-judgment motion. *See also King v. Ionization Int'l, Inc.*, 825 F.2d 1180, 1184 (7th Cir.1987) (post-judgment proceedings treated as separate lawsuits). In *Motorola* itself—an appeal from a post-judgment civil contempt order—this court held that "[a]n order finding a party in civil contempt disposes of all the issues raised only if it includes both a finding of contempt *and* the imposition of a sanction." *Id.* Ironically, the *Motorola* panel explicitly recognized that "most post-judgment orders are final decisions within the ambit of [28 U.S.C.] § 1291...." *Id.; cf. S.E.C. v. Suter*, 832 F.2d 988, 990 (7th Cir.1987); *King*, 825 F.2d at 1184.

Forest County next points to the district court's own analysis of the mandamus motion, contending that the order itself deprives us of jurisdiction. Because the district judge considered his first order "fi-

138, 141 (7th Cir.1985); *see also* 13B Charles A. Wright, et al., *Federal Practice and Procedure* § 3569, at 170–72 (2d ed. 1984). Thus both parties were apparently incorrect in their assessment of our jurisdiction.

Nevertheless the district court did not err in hearing this case. Our review of the record reveals that petitioner is an Illinois corporation. This action therefore falls within our diversity jurisdiction. 28 U.S.C. § 1332 (1988).

nal," and applied it as law of the case to TCI's motion in the nature of mandamus, Forest County argues we are without jurisdiction. Regardless of the effect of the district court's analysis on our own treatment of the merits, that analysis has no bearing on our jurisdiction. This court has jurisdiction to hear appeals even from determinations made on law of the case grounds. *Avitia v. Metropolitan Club of Chicago, Inc.*, 924 F.2d 689, 690 (7th Cir. 1991); *Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir.1990).

■ Keying on language employed in the district court's order, Forest County argues that we do not have jurisdiction over post-judgment motions that merely seek to step around the earlier judgment of the district court. In support, it again cites *Motorola.* "We will also dismiss if the alleged modification is merely an attempt to relitigate the issuance of the original injunction." 739 F.2d at 1155. Although *Motorola* involved appeals from the modification of injunctions under section 1292(a)(1), we recognize this principle in other contexts as well, as an application of the doctrine of issue preclusion. *See, e.g., Avitia*, 924 F.2d at 690–91 (where denial of motion was sufficient for issue preclusion purposes, denial of later, identical motion on preclusion grounds will not be appealable); *Cohen*, 905 F.2d at 1112–13 (assuming earlier disposition satisfies requirements for issue preclusion, later motion raising same issue is precluded); *Suter,* 832 F.2d at 990 ("The motions to vacate the injunction were efforts to create appellate jurisdiction over the injunction long after the deadline for an appeal had passed.").

But there is no issue preclusion in the case before us. The issue before the district court in its December order was the right to enforce the arbitration agreement against the municipalities. That question turned, according to the district court, on whether the municipalities and FTC were the same party. It refused, for example, to conduct an inquiry to determine whether

FTC was an "alter ego" of the municipalities, an inquiry it believed inappropriate in a confirmation setting. Dec. and Order at 10–11 (Dec. 12, 1989). Issue preclusion would not apply, then, if TCI's motion in the nature of mandamus presented any question other than whether FTC and the municipalities constitute the same party. As we explain below, other issues required resolution in order to dispose of that motion.

When requested in an appropriate motion,[2] a district court may under Rule 69(a) issue a writ of mandamus as provided by the law of the state in which that court sits. *Arnold v. BLaST Intermediate Unit 17*, 843 F.2d 122, 124–25 (3d Cir.1988); 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3012, at 66 (1973). Wisconsin law clearly provides for a writ of mandamus as an action supplemental to and in aid of judgment, *see Elkhorn Area School Dist. v. East Troy Community School Dist.*, 127 Wis.2d 25, 377 N.W.2d 627 (Ct.App.1985), which can be applied against a nonparty to the original judgment as well as against a party, *Miller v. Smith*, 100 Wis.2d 609, 302 N.W.2d 468 (1981). In *Cords v. State*, 62 Wis.2d 42, 56, 214 N.W.2d 405, 413 (1974), the Wisconsin Supreme Court announced that the state could be forced to satisfy a tort judgment against its employee, if at all, through an action in mandamus. That same court in *Miller v. Smith* considered requiring the state, by mandamus, to satisfy a judgment entered against a state employee but refused only because of a defect in the judgment itself. 100 Wis.2d at 622, 302 N.W.2d at 474–75. In neither case was the state the "same party" as the person against whom judgment was rendered, yet the court suggested further inquiry was required to determine if mandamus would lie. *See also Argento v. Village of Melrose Park*, 838 F.2d 1483, 1493–95 (7th Cir.1988) (applying Illinois law) (state officer's tort liability can be enforced through mandamus against state).

■ Hence, while the district court decided in its December order that FTC and

---

2. Although Fed.R.Civ.P. 81(b) abolished the writ of mandamus, it states that "[r]elief heretofore available by mandamus ... may be obtained by appropriate action or by appropriate motion under the practice prescribed in these rules." *See Sanchez–Espinoza v. Reagan*, 770 F.2d 202, 207 n. 7 (D.C.Cir.1985) (Scalia, J.) (citing cases).

the municipalities were not the "same party," that answer was not dispositive for purposes of TCI's motion for an order in the nature of mandamus. In executing judgments against political units through mandamus, courts will also inquire whether the state is subject to third-party liability. *See, e.g., Argento*, 838 F.2d at 1493–95 (state statute makes state liable for judgment against its officer); *Elkhorn*, 127 Wis.2d at 30, 377 N.W.2d at 630 (issuance of mandamus is controlled by equitable principles); *Miller*, 100 Wis.2d at 613–15, 302 N.W.2d at 470–71 (discussing whether statute provided basis for executing judgment against state through mandamus); *cf. Skevofilax v. Quigley*, 810 F.2d 378, 386–87 (3d Cir.), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1956, 95 L.Ed.2d 528 (1987).

■ Having decided that we possess jurisdiction to hear this case, we address a second issue antecedent to the merits, though it is referenced only indirectly by Forest County in its brief. TCI presses numerous arguments for issuing the writ, but each of them refers to FTC's independence, or obversely, to the municipalities' responsibility for judgments entered against FTC, as a consequence of state law or the contract that created FTC. Forest County might have argued (had it recognized the possibility that we might accept jurisdiction) that TCI is barred from pressing this argument by the very doctrine of issue preclusion we have already discussed. The district court raised the issue of FTC's statutory and contractual independence in its December opinion, finding the municipalities insulated from judgment against FTC. The time to appeal that decision passed, this argument continues, and the issue cannot be relitigated even in a distinct, subsequent motion.

At first blush the problem we raise might be fatal to this appeal (if the issue has not been waived), but the objection is ultimately without effect. Issue preclusion can arise only when the issue was necessarily decided by the prior judgment. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Derrickson v. City of Danville*,

845 F.2d 715, 721 (7th Cir.1988). In its probing of *Orion* and the question whether the municipalities were separate parties not subject to section 9 confirmation, the district court purportedly decided that FTC was a "quasi-municipal corporation." We say purportedly because, under *Orion*, that determination was not necessary to decide the question before the district court. Without taking a position on *Orion*'s viability in this circuit (recall that the order applying *Orion* was not appealed), we can still observe that the municipalities' duty to indemnify FTC was not an issue necessary to apply *Orion*'s rule that federal courts should confirm an arbitration award only against the parties to the arbitration.

> The usual office of the confirmation action under 9 U.S.C. § 9 is simply to determine whether the arbitrator's award falls within the four corners of the dispute as submitted to him. This action is one where the judge's powers are narrowly circumscribed and best exercised with expedition. It would unduly complicate and protract the proceeding were the court to be confronted with a potentially voluminous record setting out details of the corporate relationship between a party bound by an arbitration award and its purported "alter ego."

*Orion*, 312 F.2d at 301.

The plaintiff in *Orion* sought enforcement on an alter ego theory, thus prompting the court to use that corporate doctrine as an example of inquiries outside the scope of a section 9 confirmation action. For the same reason, the question of the municipalities' contractual or statutory duty to indemnify FTC was not properly before the district court in its December order. That theory likewise raises a host of issues requiring more scrutiny than section 9 envisions. The "four corners" of the arbitration award in this case included only TCI and FTC as parties, and *Orion* holds that this in itself is enough to deny enforcement against the municipalities. All else was superfluous to the judgment, and therefore irrelevant to our consideration of this appeal. *Cf. Elkhorn*, 127 Wis.2d at 31, 377 N.W.2d at 630 (issue preclusion does not apply because "issues are different as

between an action at law and an equitable action [seeking writ of mandamus]").

At last we come to the merits of this appeal, though it is a short visit to be sure. Forest County has chosen to rest on its jurisdictional arguments before this court. Having rejected each of these objections, we treat any arguments the county might have made with respect to the merits as waived, *Patrick v. Jasper County,* 901 F.2d 561, 570 (7th Cir.1990), and hold that the writ should issue against the county. We order this remedy not without assurance of its justification. Wisconsin courts will issue writs of mandamus to compel action by a public official. *Watkins v. Milwaukee County Civil Service Comm'n,* 88 Wis.2d 411, 276 N.W.2d 775 (1979); *State ex rel. Dalton v. Mundy,* 80 Wis.2d 190, 257 N.W.2d 877 (1977). Under Wis. Stat. § 66.09 (1989), the Forest County clerk has a clear duty to raise taxes "[w]hen a final judgment for the payment of money shall be recovered against" the county. We are confident that the arbitration award against FTC would constitute a judgment that "shall be recovered against" Forest County.

Nothing in the Wisconsin statutes authorizing municipalities to form transportation commissions requires that those commissions operate independently of the municipalities. And in creating FTC, Forest County did not in fact create a separate entity which it need not indemnify in event of default. FTC was created by contract among Forest County, Tipler and Long Lake, pursuant to Wis.Stat. § 59.968 (1979)[3]; it was never formally incorporated.

Nor does FTC's contract adopt the traditional language of independence. A municipal corporation will usually be designated "a body politic and corporate." 1 Charles R.P. Keating, *McQuillan Municipal Corporations* § 2.07a, at 152 (3rd ed. 1987). Wisconsin describes only its villages and cities with this language, Wis.Stat. § 66.-019(1), and nothing in FTC's contract suggests that it has somehow donned this man-

tle. *Cf. Allis–Chalmers Corp. v. Emmet County Council of Governments,* 355 N.W.2d 586, 590 (Iowa 1984) (council of governments found independent because it was designated "a public body corporate and politic and separate legal entity" in the agreement of formation).

We have jurisdiction to hear this appeal, and we believe the defendant has waived any argument regarding the denial of the writ. We therefore remand this case to the district court to issue the appropriate writ of mandamus, ordering the Clerk of Forest County to satisfy the judgment against FTC pursuant to Wis.Stat. § 66.09.

REVERSED AND REMANDED WITH INSTRUCTIONS

---

**3.** In the proceedings below, Forest County and the Town of Long Lake asserted that FTC was formed pursuant to Wis.Stat. § 59.967. Brief in Opposition to Petitioner's Petition for Confirma-

tion of Arbitration Award and Entry of Judgment at 4 (Feb. 22, 1988). But close examination of the 1979 agreement reveals that FTC was, according to that document, formed pursu-

ant to section 59.968. Contract Creating Commission Pursuant to Wisconsin Law to Provide Certain Transportation Services With Power to Acquire a Transportation System § 3.05 at 9 (June 7, 1979). In any event, it is immaterial whether section 59.967 or 59.968 applies, since both statutes refer to Wis.Stat. § 66.30, which governs agreements among municipalities. *See* Wis.Stat. §§ 59.967(10) and 59.968(7m) (1979). Section 66.-30, in turn, does not specify whether joint commissions like FTC are to be treated as separate municipal corporations. In the absence of other authority, the language of the agreement must control.